Charles R. Gibbs (SBN: 07846300)
Debbie Green (Admitted *Pro Hac Vice*)
Eric C. Seitz (SBN: 24067863)
**McDERMOTT WILL & EMERY LLP**
2501 N. Harwood Street, Suite 1900
Dallas, Texas  75201
Telephone: 469.715.4979
Facsimile: 972.692.7700
crgibbs@mwe.com
dgreen@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KORNBLUTH TEXAS, LLC, | ) | Case No. 21-32261 (CML) |
| | ) | |
| Debtor. | ) | **Re: Docket No. 3** |
| | ) | |

### WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC ("Lender"), by its undersigned attorneys, hereby files this objection (the "Objection") to the *Emergency Motion for Authority to Use Cash Collateral* [Docket No. 3] (the "Motion") filed by Debtor Kornbluth Texas, LLC (the "Debtor").  A proposed order denying the Motion is attached hereto as **Exhibit A**.  In support of the Objection, Lender submits the *Declaration of Scott Fishkind in Support of WFCM 2016-LC25 West Bay Area Boulevard, LLC's Objection to Emergency Motion for Authority to Use Cash Collateral* (the "Fishkind Declaration"), attached hereto as **Exhibit B**.  In further support of its Objection, Lender states as follows:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND

3. The Debtor executed a Promissory Note dated October 21, 2016 (the "Note"),[1] payable to Lender's predecessor in interest, Rialto Mortgage Finance, LLC, a Delaware limited liability company ("Original Lender"), whereby Original Lender loaned the Debtor Eight Million Three Hundred Fifty Thousand and No/100 Dollars ($8,350,000.00) at the per annum pre-default interest rate of 5.00% (the "Loan").

4. The Debtor and Original Lender entered into a Loan Agreement dated as of October 21, 2016 (the "Loan Agreement").[2]

5. In consideration for making the Loan, the Debtor granted Original Lender, among other things, pursuant to that certain Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated as of October 21, 2016 (the "Deed of Trust"),[3] a security interest in substantially all of the Debtor's property, including certain real property and related improvements described therein, commonly known as Holiday Inn Webster and located at 302 West Bay Area Boulevard, Webster, Texas 77598 (the "Real Estate") and all fixtures and personal property used or usable in connection with the Real Estate, including, but not limited to, all personal property described in the Deed of Trust and other Loan Documents (defined below), and all leases and rents, condemnation awards, insurance proceeds, tax refunds, rebates or credits, conversion proceeds,

---

[1] A true and correct copy of the Note is attached to the Fishkind Declaration as **Exhibit A**.

[2] A true and correct copy of the Loan Agreement is attached to the Fishkind Declaration as **Exhibit B**.

[3] A true and correct copy of the Deed of Trust is attached to the Fishkind Declaration as **Exhibit C**.

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO**
**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL – Page 2**

rights, agreements, intangibles, accounts, causes of action, accounts receivables, and other rights (collectively, the "Collateral").

6. Subsequent to origination of the Loan, through a series of assignments, Original Lender's interest in the Note, Loan Agreement, Deed of Trust, and other loan documents[4] (collectively, the "Loan Documents") were transferred and assigned to Lender.[5]

---

[4] Additional loan documents include: that certain **Assignment of Leases and Rents** (the "ALR") dated as of October 21, 2016, executed by the Debtor for the benefit of the Original Lender and recorded as instrument number RP-2016-481295 in the Records, a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit D**; Original Lender's security interest in the Collateral perfected by filing pursuant to that certain UCC Financing Statement (Form UCC1) filed on October 25, 2016, under Filing Number 16-0035155905, with the Secretary of State of the State of Texas (the "SOS-TX UCC 1"), a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit E**; and Original Lender's security interest in the Collateral constituting "fixtures" perfected pursuant to that certain UCC Financing Statement (Form UCC1) recorded on October 25, 2016, as Instrument Number RP-2016-481296, in the records (the "Harris County TX UCC 1"), a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit F**.

[5] Documents subsequent to origination of the Loan evidencing the assignment and transfer of the Original Lender's interest in the Loan Documents to Lender include: an Allonge to the Note from Original Lender to RMF Sub 1, LLC; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from Original Lender to RMF Sub 1, LLC, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117834 in the Records; the Assignment of Assignment of Leases and Rents from Original Lender to RMF Sub 1, LLC, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117835 in the Records; the UCC Financing Statement Amendment (Form UCC3) from Original Lender to RMF Sub 1, LLC, filed on March 20, 2017, under Filing Number 17-00093017, with the Secretary of State of the State of Texas; the UCC Financing Statement Amendment (Form UCC3), recorded on March 21, 2017, as Instrument Number RP-2017-117836, in the Records; an Allonge to the Note from RMF Sub 1, LLC to Original Lender; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from RMF Sub 1, LLC to Original Lender, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117837 in the Records; the Assignment of Assignment of Leases and Rents from RMF Sub 1, LLC to Original Lender, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117838 in the Records; the UCC Financing Statement Amendment (Form UCC3), filed on March 20, 2017, under Filing Number 17-00093022, with the Secretary of State of the State of Texas; the UCC Financing Statement Amendment (Form UCC3), recorded on March 21, 2017, as Instrument Number RP-2017-117839, in the Records; an Allonge to the Note from Original Lender to Trust; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from Original Lender to Trust, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117840 in the Records; the Assignment of Assignment of Leases and Rents from Original Lender to Trust, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117841 in the Records; the UCC Financing Statement Amendment (Form UCC3), filed on March 20, 2017, under Filing Number 17-00093033, with the Secretary of State of the State of Texas; the UCC Financing Statement Amendment (Form UCC3), recorded on March 21, 2017, as Instrument Number RP-2017-117842, in the Records; an Allonge to the Note from Trust to Lender; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents from Trust to Lender, executed on and effective as of June 25, 2021, and recorded on June 29, 2021, as Instrument Number RP-2021-362581 in the Records; the Assignment of Assignment of Leases and Rents from Trust to Lender, executed on and effective as of June 25, 2021, and recorded on June 29, 2021, as Instrument Number RP-2021-362582 in the Records; the UCC Financing Statement Amendment (Form UCC3), filed on June 28, 2021, under Filing Number 21-00270238, with the Secretary of State of the State of Texas; and the UCC Financing Statement Amendment (Form UCC3), recorded on June 29, 2021, as Instrument Number RP-2021-362583, in the Records. Collectively, the

7. Lender holds a perfected and first-priority secured claim against the Debtor in excess of $9.5 million (the "Debt").[6]

8. As the value of the Collateral is significantly less than the Debt, and the Collateral is in danger of having its value materially diminished as a result of the Debtor's mismanagement, on June 24, 2021, Lender's predecessor-in-interest filed suit in Harris County district court against the Debtor in a case styled *Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-LC25, Commercial Mortgage Pass-through Certificates, Series 2016, LC25, by and through its special servicer, LNR Partners, LLC* ("Trust") *v. Kornbluth Texas, LLC*, Cause No. 202138181 (189th Judicial District Court, Harris County) for, among other relief, the emergency appointment of a receiver. A hearing on Trust's receivership application was set for July 12, 2021.

9. On July 5, 2021, the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Its interim use of Cash Collateral (defined below) is governed by the *Order Authorizing Interim Use of Cash Collateral* [Docket No. 12], which the Court entered on July 7, 2021.

10. A hearing on the Debtor's use of Cash Collateral on a final basis is currently scheduled for August 16, 2021 at 1:00 p.m. prevailing Central Time.

---

documents evidencing the transfer from Original Lender to Lender will be referenced as the "Assignment." A true and correct copy of each document evidencing the Assignment is attached to the Fishkind Declaration as **Exhibit G-1**, **Exhibit G-2**, **Exhibit G-3**, **Exhibit G-4**, **Exhibit G-5**, **Exhibit G-6**, **Exhibit G-7**, **Exhibit G-8**, **Exhibit G-9**, **Exhibit G-10**, **Exhibit G-11**, **Exhibit G-12**, **Exhibit G-13**, **Exhibit G-14**, **Exhibit G-15**, **Exhibit G-16**, **Exhibit G-17**, **Exhibit G-18**, and **Exhibit G-19**.

[6] Lender renewed the original UCC-1 filings perfecting its security interest in the collateral pursuant to that certain UCC Financing Statement Amendment (Form UCC3) filed on May 3, 2021, as File Number 2100176978, with the Secretary of State of the State of Texas, a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit H-1**, and pursuant to that certain UCC Financing Statement Amendment (Form UCC3) recorded on May 4, 2021, as Instrument Number RP-2021-244550 in the Records a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit H-2**.

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO**
**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL – Page 4**

### III. OBJECTION

11. The Debtor seeks to use funds collected from its normal business operations (the "Cash Collateral") to maintain its day-to-day operations. However, the Motion fails to satisfy the statutory requirements for the use and disposition of such Cash Collateral, most notably the adequate protection of Lender's liens supporting repayment of the Debt.

12. Under section 363(c)(2) of the Bankruptcy Code, "[t]he trustee may not use, sell or lease cash collateral . . . unless—(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease." 11 U.S.C. § 363(c)(2). Importantly, section 363(e) expressly prohibits the non-consensual use of cash collateral absent adequate protection. 11 U.S.C. § 363(e) ("at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection"); *see also In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 695-96 (Bankr. S.D. Tex. 2009). The party requesting court approval to use cash collateral over a secured creditor's objection must prove that the secured creditor is adequately protected. 11 U.S.C. § 363(p)(1); *Las Torres Dev.*, 413 B.R. at 695.

13. The Debtor has not—and cannot—meet its burden of proof.

14. In the Motion, the Debtor offers only to give Lender "replacement liens." Although section 361 provides, as an example of adequate protection, "additional or replacement liens in favor of the secured creditor to the extent the debtor's use of cash collateral results in a decrease in the value of the creditor's security interest," courts have consistently found that a replacement lien on property or assets of the debtor already encumbered by the secured lender in question is insufficient protection against the diminution in value of such secured creditor's interest resulting

from the debtor's use of cash collateral. *See, e.g., In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 566 (B.A.P. 6th Cir. 2010) (finding no adequate protection where a debtor granted a replacement lien to a secured lender in rents already encumbered by the lender's prepetition security interest because such lien would not prevent any diminution in value arising from the debtor's post-petition use of such rents); *In re Chatham Parkway Self Storage, LLC*, 12-42153, 2013 WL 1898058, at *6 (Bankr. S.D. Ga. Apr. 25, 2013); *In re Union-Go Dairy Leasing, LLC*, No. 10-01703, 2010 WL 1848485, *4 (Bankr. S.D. Ind. May 6, 2010) (noting that a debtor cannot give as adequate protection a replacement lien in favor of a secured party in a post-petition asset already fully encumbered by such party's security interest).  Indeed, in *In re Torres Development, L.L.C.*, this Court found the debtor's offer to grant its secured lender replacement liens on post-petition rents as adequate protection for its proposed use of the lender's cash collateral "disingenuous."  414 B.R. at 696.

15. While generally a secured creditor's security interest in cash collateral generated post-petition is cut off as of the petition date by § 552(a) of the Bankruptcy Code, by virtue of section 552(b), a pre-petition security interest in amounts paid as rents of the debtor's property or, if the debtor's property is a hotel, the fees, charges, accounts, or other payments for the use or occupancy of the hotel rooms or other public facilities in the hotel, continues in full force and effect post-petition.  11 U.S.C. § 552(b).

16. As the Debtor is a hotel and Lender has a pre-petition security interest in the Cash Collateral, it is indisputable that Lender is fully secured in all pre-petition and post-petition Cash Collateral.  Thus, because Lender already has a post-petition lien on the Cash Collateral, a replacement lien is not adequate protection for the use of such Cash Collateral.

17. *In re Hari Ram, Inc.*, 507 B.R. 114 (Bankr. M.D. Pa. 2014) is instructive. In *Hari Ram*, the debtor operated a hotel and its lender had a valid, perfected security interest in the hotel room revenues. The debtor sought authority from the court to use the lender's cash collateral in the hotel revenues and to provide adequate protection through a replacement lien on future receipts. In considering the debtor's motion, the court considered the following factors: (1) the value of the secured creditor's interest; (2) the risk to the secured creditor's value resulting from the debtor's request for cash collateral; and (3) whether the debtor's adequate protection proposal protects value as nearly as possible against risk to that value consistent with the concept of indubitable equivalence. *Id.* at 125. In addition to considering the debtor's adequate protection proposal, the court also considered whether there was any reasonable chance of reorganization, because "[i]f a debtor is engaged in an obviously futile attempt to reorganize, it should not be permitted to jeopardize a creditor's cash collateral." *Id.* at 125 (citing *In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707, 711 (Bankr. E.D. N.C. 1983)); *see also Sharon Steel Corp. v. Citibank, N.A.*, 159 B.R. 165, 172 (Bankr. W.D. Pa. 1983) (holding that debtor could not use cash collateral although objecting creditors were oversecured when business plan was unrealistic and unattainable). The court found the debtor's offer of a replacement lien on the post-petition rents "meaningless because the creditor already ha[d] a lien" on the rents. *In re Hari Ram, Inc.*, 507 B.R. at 125. Thus, the court held that the debtor failed to sustain its burden to prove that it was able to safeguard its secured lender from the diminution in the value of its interest in the cash collateral while it attempted to reorganize and denied the motion. *Id.* at 126.

18. That result in *In re Hari Ram* should be the result in this case—the Motion should be denied. "When devising a proposal for adequate protection of a secured creditor's interest, the proponent 'should as nearly as possible under the circumstances of the case provide the creditor

with the value of his bargained for rights.'" *Id.* at 120. The Debtor's offer of replacement liens on Lender's Cash Collateral falls far short of providing Lender "with the value of [its] bargained for rights" and is "meaningless." Moreover, the Debtor's projected budget is not credible.

19. In connection with the Motion, the Debtor has submitted a proposed budget (the "<u>Budget</u>"). One glaring omission from the Budget is any line item providing for payment to the Lender.

20. Moreover, the Budget's projections have no basis in reality. The Budget predicts that the Debtor's gross income over the next 30 days will equal $279,000.00, which, when annualized, equates to approximately $3.4 million for 2021. By comparison, the Debtor's total gross income in 2019 was approximately $2.4 million, and its gross income in 2020 was only a $1.2 million.[7] In fact, Debtor's income in 2020 and to date in 2021 has not enabled the Debtor to pay the County Hotel Occupancy Taxes due on the property for 2020, with such nonpayment resulting in a default judgment in favor of Harris County, Texas and Houston Sports Authority against the Debtor in the case styled *Harris County, Texas and Houston Sports Authority v. Kornbluth Texas, LLC dba Holiday Inn Webster*, Cause No. 2020-69733 (269th Judicial District, Harris County, filed October 29, 2020).[8] And on information and belief, the Debtor's failure to pay taxes on the property has continued through the petition date.

21. Further belying Debtor's unlikelihood of achieving the income projected in its budget or responsibly using Lender's Cash Collateral are Debtor's undisclosed SBA loan in 2020 and Debtor's use of cash, during financially difficult times, to pursue uncertain litigation. More specifically, in 2020, Debtor breached the Loan Agreement by pledging and/or granting liens

---

[7] The Debtor provided profit and loss statements to the Lender prior to the Petition Date.

[8] A true and correct copy of the petition and default judgment are attached to the Fishkind Declaration as **Exhibit J** and **Exhibit K**, respectively.

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL – Page 8**

against the Property to the U.S. Small Business Administration.[9] From 2018 through the Petition Date, Debtor prosecuted a suit against the former owner of the Property and others, likely with cash from operating the hotel.[10]

22. Given Debtor's history and the still ongoing economic uncertainties, there is no reason whatsoever to believe that the Debtor's income projections are even remotely feasible, further demonstrating that the Debtor can neither satisfy its obligations to the Lender or taxing authorities nor realistically reorganize its business. The Debtor's use of Lender's Cash Collateral should be denied for this reason alone. *See In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) (denying use of cash collateral for lack of adequate protection where the debtor had "no real budget or cash flow expectation by which to gauge the ongoing profitability of his business enterprises" and the only evidence of adequate protection was the debtor's stated belief that its business operations would improve).

23. To the extent, however, that the Debtor contends that Lender will receive adequate protection because the Debtor's use of Cash Collateral will preserve the going-concern value of the Debtor's business, the Motion still fails. In order to satisfy its burden of proof, the Debtor must demonstrate that it has compensated Lender for the decline in the value of its interest caused by the Debtor's use of the Cash Collateral. *See Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assoc. Ltd. P'ship*, 153 B.R. 204, 210 (N.D. Ill. 1993); *In re Thompson*, No. 08-2560, 2008 Bankr. LEXIS 1547, at *3 (Bankr. N.D. Ill. May 23, 2008). Merely demonstrating that the contemplated use of cash collateral may safeguard the estate's assets from a more rapid deterioration or permit the debtor to operate as a going concern is insufficient as a matter of law. *See, e.g., Resolution Trust*

---

[9] A true and correct copy of the UCC Financing Statement is attached to the Fishkind Declaration as **Exhibit I**.

[10] A true and correct copy of the petition in that lawsuit is attached to the Fishkind Declaration as **Exhibit L**.

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO**
**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL – Page 9**

*Corp. v. Swedeland Dev. Grp.*, 16 F.3d 552, 566 (3d Cir. 1994) (finding, in part, that continued construction on a debtor's property using DIP financing does not, standing alone, adequately protect a secured creditor against the diminution in value of its collateral realized as a result of the DIP lender's priming lien); *In re Fontainebleu Las Vegas Holdings, LLC*, 434 B.R. 716, 754 (S.D. Fla. 2010) (rejecting debtor's contention that adequate protection existed to accommodate the effects of a DIP lender's priming lien where the contemplated DIP financing would safeguard the debtor's asserts from deterioration pending a bankruptcy sale pursuant to section 363 of the Bankruptcy Code).[11]  Here, while the Debtor's use of Cash Collateral is alleged to preserve the Debtor's operations as a going concern (a laudable objective in principle), the Debtor has failed to provide any indication of how it will compensate Lender for the diminution in value of its interests in the Cash Collateral caused by such use.

24.     Since the Debtor has failed to provide adequate protection of Lender's interests, the Court should deny the Motion and require the Debtor to segregate and preserve the Cash Collateral, including the proceeds or offspring of the Cash Collateral.

## IV.     CONCLUSION

WHEREFORE, Lender respectfully requests this Court enter an order (i) denying the Motion for the reasons stated herein, (ii) requiring the Debtor to segregate Cash Collateral for distribution to Lender, and (iii) grant such other and further relief as the Court deems just and proper.

---

[11] Although the cases cited concern the effects of a DIP priming lien—not a debtor's use of cash collateral—on a secured creditor's interests, "the principle of adequate protection [that a secured creditor must be compensated for the decline in value of its interest] applies equally in both cases." *See In re Fontaineblue Las Vegas Holdings*, 434 B.R. at 754.

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S OBJECTION TO**
**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL – Page 10**

Dated: July 26, 2021

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: */s/ Charles R. Gibbs*
Charles R. Gibbs (Texas State Bar No. 07846300)
Debbie Green (Admitted *Pro Hac Vice*)
Eric C. Seitz (Texas State Bar No. 24067863)
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201
Telephone: 469.715.4979
Facsimile: 972.692.7700
crgibbs@mwe.com
dgreen@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC**

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that the parties conferred regarding the Motion prior to filing this response. The parties were unable to reach a resolution.

*/s/ Debbie E. Green*
Debbie E. Green

**CERTIFICATE OF SERVICE**

The undersigned further certifies that on July 26, 2021, a true and correct copy of the foregoing document was served on all parties in interest as set out on the attached matrix either through the court's electronic filing system or by first class mail.

*/s/ Debbie E. Green*
Debbie E. Green