Charles R. Gibbs (SBN: 07846300)
Debbie Green (Admitted *Pro Hac Vice*)
Eric C. Seitz (SBN: 24067863)
**McDERMOTT WILL & EMERY LLP**
2501 N. Harwood Street, Suite 1900
Dallas, Texas  75201
Telephone: 469.715.4979
Facsimile: 972.692.7700
crgibbs@mwe.com
dgreen@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST
BAY AREA BOULEVARD, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KORNBLUTH TEXAS, LLC, | ) | Case No. 21-32261 (CML) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S MOTION
FOR RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO
NON-RESIDENTIAL REAL PROPERTY**

> **THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.  IF
> IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE
> BANKRUPTCY PROCESS.  IF YOU DO NOT WANT THE STAY LIFTED,
> IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE.  IF YOU
> CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY
> TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING.
> IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING.
> EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT
> MAY RULE.**
>
> **REPRESENTED    PARTIES    SHOULD    ACT    THROUGH    THEIR
> ATTORNEY.**
>
> **THERE WILL BE A HEARING ON THIS MATTER ON AUGUST 31, 2021,
> AT 10:00 A.M. (CT), BEFORE THE HONORABLE CHRISTOPHER
> LOPEZ, UNITED STATES BANKRUPTCY JUDGE FOR THE
> SOUTHERN DISTRICT OF TEXAS, IN COURTROOM 401, 515 RUSK**

**STREET, HOUSTON, TX 77002, TO CONSIDER THE RELIEF REQUESTED IN *WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO NON-RESIDENTIAL REAL PROPERTY.* IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. YOU MAY VIEW VIDEO VIA HTTPS://WWW.JOIN.ME/. CLICK ON "JOINMEETING". THE CODE FOR THE MEETING IS "JUDGELOPEZ". IF YOU ATTEMPTING TO VIEW THE BROADCAST ON AN IPAD OR SIMILAR DEVICE, YOU MAY BE REQUIRED TO DOWNLOAD A FREE APP FROM THE WEBSITE.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC ("Lender"), and files, by and through its undersigned counsel, this *Motion for Relief from the Automatic Stay with Respect to Non-Residential Real Property* (the "Motion") to foreclose its interest in various items of collateral herein securing the debt owed by Kornbluth Texas, LLC (the "Debtor") to Lender. In support of the Motion, Lender submits the *Declaration of Scott Fishkind in Support of WFCM 2016-LC25 West Bay Area Boulevard, LLC's Motion for Relief From the Automatic Stay With Respect to Non-Residential Real Property* (the "Fishkind Declaration"), attached hereto as **Exhibit B**. In further support, Lender respectfully would show the Court as follows:

## I.     PRELIMINARY STATEMENT[1]

1.      The Debtor filed this chapter 11 proceeding as an attempt to halt the Lender's exercise of its rights under the Loan Documents (defined below).  The Debtor—whose sole asset is subject to the Lender's security interest—filed this chapter 11 case shortly after the Lender filed a petition for appointment of a receiver in Harris County District Court.  Prior to the initiation of this bankruptcy case, the Debtor failed to make full monthly debt service payments after December 2020 and allowed a tax lien to be placed on the Lender's collateral.  Moreover, the Budget (defined below) that has been submitted by the Debtor is plainly unrealistic when judged against the Debtor's historical financial performance.  The Lender respectfully submits that through these actions, the Debtor has demonstrated that it does not have the ability to reorganize its business, and the sole reason for filing this case was to delay the Lender's appointment of a receiver.  This tactic is an abuse of the judicial process and the reorganization provisions of the Bankruptcy Code that must not be countenanced by this Court.

2.      As set forth below, cause exists to lift the stay under section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") because: (1) the Debtor filed this bankruptcy case in bad faith; (2) the Lender's interest is not adequately protected; and (3) granting relief from the stay would avoid needless legal fees and expenses that otherwise would serve only to detract value from the Lender's recovery and add to the obligations of the Debtor.  Lifting the stay also is appropriate under section 362(d)(2) of the Bankruptcy Code because the Debtor has no equity in the Property (as defined below) and the Property is not necessary to an effective reorganization.

---

[1]  Capitalized terms shall have the meaning ascribed to them within the Motion and accompanying exhibits.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).

4.      Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The relief requested herein may be granted in accordance with the provisions of Bankruptcy Code sections 105(a) and 362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## III.     BACKGROUND

5.      On July 5, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate and manage its business as a debtor in possession under Bankruptcy Code sections 1107(a) and 1108.

6.      The Debtor's primary asset is an undivided interest (the "Debtor's Interest") in a commercial hotel building commonly known as the Holiday Inn Houston Webster (the "Real Estate").  The Real Estate is located at 302 West Bay Area Boulevard, Webster, Texas 77598.

**A.     Documents Evidencing the Lender's Interest in the Property**

7.      Prior to the Petition Date, the Debtor granted Lender a security interest in the Real Estate and all fixtures and personal property used or usable in connection with the Real Estate, including, but not limited to, all personal property described in the Deed of Trust (defined below) and other Loan Documents (defined below), and all leases and rents, condemnation awards, insurance proceeds, tax refunds, rebates or credits, conversion proceeds, rights, agreements, intangibles, accounts, causes of action, accounts receivables, and other rights (collectively, the "Collateral").  The Real Estate and Collateral together are referred to herein as the "Property."

8. The various loan documents (collectively, the "Loan Documents") between the Debtor, the Lender, and the Lender's respective predecessors-in-interest include, *inter alia*:

    a.    That certain **Promissory Note** (the "Note") dated October 21, 2016, executed by the Debtor, to the order of the Lender's predecessor, Rialto Mortgage Finance, LLC (the "Original Lender") in the original stated principal amount of Eight Million Three Hundred Fifty Thousand and No/100 Dollars ($8,350,000) (the "Loan"). A true and correct copy of the Note is attached to the Fishkind Declaration as **Exhibit A**.

    b.    That certain **Loan Agreement** (the "Loan Agreement") dated October 21, 2016, executed by the Debtor for the benefit of the Original Lender. A true and correct copy of the Loan Agreement is attached to the Fishkind Declaration as **Exhibit B**.

    c.    That certain **Deed of Trust, Assignment of Leases and Rents and Security Agreement** (the "Deed of Trust") dated October 21, 2016. The Deed of Trust is recorded as document number RP-2016-481294 of the Real Property Records of Harris County, Texas (the "Records"). A true and correct copy of the Deed of Trust is attached to the Fishkind Declaration as **Exhibit C**.

    d.    That certain **Assignment of Leases and Rents** (the "ALR") dated October 21, 2016, executed by the Debtor for the benefit of the Original Lender. A true and correct copy of the ALR is attached to the Fishkind Declaration as **Exhibit D**.

    e.    Original Lender's security interest in the Collateral was perfected pursuant to that certain UCC Financing Statement (Form UCC1) filed on October 25, 2016, as Instrument Number RP-2016-481296, with the Secretary of State of the State of Texas (the "SOS-TX UCC 1"). A true and correct copy of SOS-TX UCC1 is attached to the Fishkind Declaration as **Exhibit E**.

    f.    Original Lender's security interest in the Collateral constituting "fixtures" was also perfected pursuant to that certain UCC Financing Statement (Form UCC1) recorded on October 25, 2016, as Instrument Number RP-2016-481296, in the records (the "Harris County TX UCC 1"). A true and correct copy of Harris County TX UCC 1 is attached to the Fishkind Declaration as **Exhibit F**.

    g.    Subsequent to origination of the Loan, Original Lender, through a series of assignments, transferred and assigned its interest in the Loan Documents to Lender. That transfer is evidenced by an

Allonge to the Note from Original Lender to RMF Sub 1, LLC; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from Original Lender to RMF Sub 1, LLC, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117834 in the Records; the Assignment of Assignment of Leases and Rents from Original Lender to RMF Sub 1, LLC, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117835 in the Records; and the UCC Financing Statement Amendment (Form UCC3), filed on March 21, 2017, as Instrument Number RP-2017-117836, with the Secretary of State of the State of Texas.  That transfer is further evidenced by an Allonge to the Note from RMF Sub 1, LLC to Original Lender; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from RMF Sub 1, LLC to Original Lender, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117837 in the Records; the Assignment of Assignment of Leases and Rents from RMF Sub 1, LLC to Original Lender, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117838 in the Records; and the UCC Financing Statement Amendment (Form UCC3), filed on March 21, 2017, as Instrument Number RP-2017-117839, with the Secretary of State of the State of Texas.  That transfer is further evidenced by an Allonge to the Note from Original Lender to Wilmington Trust, National Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-LC25, Commercial Mortgage Pass-through Certificates, Series 2016-LC25 ("Trust"); the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from Original Lender to Trust, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117840 in the Records; the Assignment of Assignment of Leases and Rents from Original Lender Wilmington Trust, executed on and effective as of January 3, 2017, and recorded on March 21, 2017, as Instrument Number RP-2017-117841 in the Records; and the UCC Financing Statement Amendment (Form UCC3), filed on March 21, 2017, as Instrument Number RP-2017-117842, with the Secretary of State of the State of Texas. That transfer is further evidenced by an Allonge to the Note from Trust to Lender; the Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement from Trust to Lender, executed on and effective as of June 25, 2021, and recorded on June 29, 2021, as Instrument Number RP-2021-362581 in the Records; the Assignment of Assignment of Leases and Rents from Trust to Lender, executed on and effective as of June 25, 2021, and

recorded on June 29, 2021, as Instrument Number RP-2021-362582 in the Records; and the UCC Financing Statement Amendment (Form UCC3), filed on June 28, 2021, as Instrument Number 21-00270238, with the Secretary of State of the State of Texas. Collectively, the documents evidencing the transfer from Original Lender to Lender will be referenced as the "Assignment." A true and correct copy of each document evidencing the Assignment is attached to the Fishkind Declaration as **Exhibit G-1**, **Exhibit G-2**, **Exhibit G-3**, **Exhibit G-4**, **Exhibit G-5**, **Exhibit G-6**, **Exhibit G-7**, **Exhibit G-8**, **Exhibit G-9**, **Exhibit G-10**, **Exhibit G-11**, **Exhibit G-12**, **Exhibit G-13**, **Exhibit G-14**, **Exhibit G-15**, **Exhibit G-16**, **Exhibit G-17**, **Exhibit G-18**, and **Exhibit G-19**.

9.      The Loan Documents were transferred and assigned to, and currently are held by, the Lender, who asserts that it has valid, perfected, enforceable, and non-avoidable priority liens and mortgages upon, and security interests in, the Property.

10.      Lender renewed the original UCC-1 filings perfecting its security interest in the collateral pursuant to that certain UCC Financing Statement Amendment (Form UCC3) filed on May 3, 2021, as File Number 2100176978, with the Secretary of State of the State of Texas, a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit H-1**, and pursuant to that certain UCC Financing Statement Amendment (Form UCC3) recorded on May 4, 2021, as Instrument Number RP-2021-244550 in the Records a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit H-2**.

**B.      Loan Document Terms Relevant to This Motion**

11.      **Monthly Debt Service Payment Amount.**   The Note requires a monthly payment due on the sixth day of each calendar month up to and including November 6, 2026 (the "Maturity Date").  Note art. 1; Loan Agreement § 2.2.2.

12.      **Acceleration.**   The Note includes an acceleration provision which—if any payment required in the Note is not paid on the date when due—allows the Lender to accelerate

and make immediately due and payable, *inter alia*, the principal sum of the Note, interest, default interest, and associated costs and expenses without notice.  Note art. 2.

13.    **Cash Collateral.**  The Deed of Trust includes a provision that pledges any and all monies held by the Debtor to the Lender as additional security for the obligations under the Loan Documents until expended or applied as provided in the Deed of Trust.  Deed of Trust § 1.1.

14.    **Single Purpose Entity.**  The Loan Agreement includes a provision wherein the Debtor represented, warranted, and covenanted that it had always been and would continue to be a Single Purpose Entity (as defined in Schedule I of the Deed of Trust).  Loan Agreement § 8.5. This provision requires the Borrower to maintain its status as a single purpose entity.

15.    **Insurance Proceeds.**  The Loan Agreement includes a provision that, *inter alia*, defines the Lender's and Debtor's rights and obligations in the event of a casualty loss.  Loan Agreement § 5.4.  Under the terms of the Deed of Trust, the net insurance proceeds resulting from damage by fire or other casualty shall be made available to the Debtor only if, *inter alia*, an Event of Default (as defined in the Loan Agreement) has not occurred and remains uncured. Loan Agreement § 5.4(b)(i).

16.    **Reserve Funds.** The Loan Agreement includes a provision that, *inter alia*, established an escrow account funded by Debtor's monthly payments of (i) one-twelfth of the amount of the Property's expected taxes (the "Tax Reserve Payments") and (ii) one-twelfth of the amount sufficient to pay insurance premiums due for the renewal of coverage for the Property (the "Insurance Reserve Payments").  Loan Agreement §§ 6.3 and 6.4.

**C.    Prepetition Declaration of Default and Acceleration of Note**

17.    The Debtor stopped making its Monthly Debt Service Payment Amount (as such term is defined in the Loan Documents) after December 2020.  A true and correct copy of the Debtor's payment history is attached to the Fishkind Declaration as **Exhibit S**.

18.    Additionally, Debtor caused a UCC Financing Statement to be filed evidencing other indebtedness and the pledging and/or granting of liens against certain assets of Debtor to a purportedly secured party (U.S. Small Business Administration) other than Lender (the "UCC Financing Statement").  Filing of the UCC Financing Statement constitutes a breach of Debtor's covenants under the Loan Agreement to, while any of the Debt remains unpaid, continue to be a Single Purpose Entity.  Further, filing of the UCC Financing Statement constitutes an unauthorized "Transfer" under Section 4.1.12(a) of the Loan Agreement.  A true and correct copy of the UCC Financing Statement is attached to the Fishkind Declaration as **Exhibit I**.

19.    Debtor also failed to pay County Hotel Occupancy Taxes due the Harris County Sports Authority levied upon the cost of occupancy of sleeping rooms furnished by hotels, such as Debtor, and as a result of such nonpayment, a lawsuit was filed by Harris County, Texas and Houston Sports Authority against Debtor, as evidenced by Plaintiff's Original Petition and Application for Temporary and Permanent Injunctions in the case styled *Harris County, Texas and Houston Sports Authority v. Kornbluth Texas, LLC dba Holiday Inn Webster*, Cause No. 2020-69733 (269th Judicial District, Harris County, filed October 29, 2020) (the "Tax Petition").  Further, it appears from a review of the docket that a default judgment was entered against Debtor on May 7, 2021 (the "Default Judgment").  Debtor's failure to inform Lender of the Tax Petition and Default Judgment is a breach of Section 4.1.5 of the Loan Agreement.  Further, Debtor's failure to remit taxes is a breach of, *inter alia*, Section 4.1.2 of the Loan Agreement, which posed a threat that Debtor's operation of the Property would be ordered shut down and a

lien imposed against the Property.  A true and correct copy of the Tax Petition and Default Judgment are attached to the Fishkind Declaration as **Exhibit J** and **Exhibit K**, respectively.

20.     On or about October 22, 2018, Debtor filed a lawsuit styled Kornbluth Texas, LLC v. Sunny Capital Management, L.P., WellsFargo Capital Management, L.L.C., Chao Chen, Jack Chen and Yueh Yun Chuang, Cause No. 2018-76577 (133th Judicial District Court, Harris County), alleging that defendants, the prior owner of the Property, had failed to comply with a Property Improvement Plan (the "PIP") issued by Holiday Inn, which the prior owner agreed to do in an amended purchase and sale agreement (the "PIP Lawsuit").  Debtor alleges in the PIP Lawsuit that it had to complete the PIP at its expense and that the prior owner received some revenue to which it was not entitled.  Upon information and belief, Debtor has used cash flow from the Property to fund the PIP Lawsuit without Lender's consent.  A true and correct copy of the petition in the PIP Lawsuit is attached to the Fishkind Declaration as **Exhibit L**.

21.     On or about April 23, 2021, the Lender's predecessor-in-interest, through its special servicer, delivered to the Debtor a demand for payment and notice of intent to accelerate (the "Notice of Default").  The Notice of Default iterated Debtor's defaults.  A true and correct copy of the Notice of Default is attached to the Fishkind Declaration as **Exhibit M**.

22.     The Notice of Default also included a statement indicating to Debtor that "[u]nless all Current Defaults [as defined therein] are fully cured on or before 12:00 Noon, Dallas, Texas time on Friday, May 14, 2021" (the "Cure Period"), Lender "will accelerate the maturity of the Note and declare the unpaid principal balance, accrued and unpaid interest and all other amounts payable under the Loan Documents immediately due and payable in their entirety."  *See* Notice of Default.

23.     On or about June 7, 2021, counsel for Lender's predecessor-in-interest, on behalf of Lender's predecessor-in-interest, delivered to Debtor a notice of acceleration of debt (the "Notice of Acceleration").  The Notice of Acceleration, among other things, notified Debtor of certain current defaults and that Lender's predecessor-in-interest had accelerated the maturity of the Note pursuant to its rights under the Loan Documents.  A true and correct copy of the Notice of Acceleration is attached to the Fishkind Declaration as **Exhibit N**.

24.     On June 24, 2021, Lender's predecessor-in-interest filed a Petition and Emergency Application for Appointment of Receiver in the District Court of Harris County, Texas (the "Receivership Application"), Case No. 202138181.  A true and correct copy of the Receivership Application is attached to the Fishkind Declaration as **Exhibit O**.

25.     As of the date or dates set forth in the Loan Payoff Statement, a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit P**, the Total Amount to Payoff Loan, as defined therein, is **$9,529,015.95** (the "Debt"), and such amount continues to be due and owing as of the date hereof and thereof.

**D.     The Bankruptcy Case**

26.     On July 5, 2021, prior to the Lender being able to serve the Debtor with the Receiver Application, the Debtor filed its petition under chapter 11 of the Bankruptcy Code [Docket No. 1].

27.     The Debtor filed its schedules on July 19, 2021, a true and correct copy of which is attached to the Fishkind Declaration as **Exhibit T**.  The U.S. Trustee has scheduled a meeting of the creditors for August 2, 2021.

28.     The Debtor filed an emergency motion for use of cash collateral [Docket No. 3], which included a proposed budget (the "Budget").  The Budget does not contain any line items for payment to the Lender and only contains a line item of $13,000 for state and local tax.

Worse yet, the Budget's projections have no basis in reality.  The Budget envisages that the Debtor's gross income over the next 30 days will equal $279,000.00, which, when annualized, equates to approximately $3.4 million for 2021.  By comparison, the Debtor's total gross income in 2019 was approximately $2.4 million, and its gross income in 2020 was only $1.2 million.[2]  Given the still ongoing economic uncertainties pandemic, there is zero reason to think that the Debtor's income projections are even remotely workable, further demonstrating that the Debtor can neither satisfy its obligations to the Lender nor realistically reorganize its business.

## IV.     RELIEF REQUESTED

29.     By this Motion, the Lender respectfully requests that this Court authorize relief from the automatic stay, pursuant to Bankruptcy Code section 362(d), so that the Lender may pursue its state law remedies, including, but not limited to, foreclosure on the Property.  In the alternative, Lender requests that the Debtor be required to provide sufficient adequate protection of Lender's interest in the Property as required by Bankruptcy Code section 363(e).

## V.     BASIS FOR RELIEF

30.     In the instant case, it is appropriate to lift the stay to allow the Lender to enforce its rights under the Loan Documents and pursue applicable state law remedies, including the right to conduct a non-judicial foreclosure.  The "fundamental purpose of the automatic stay is to give [a debtor] a breathing spell and time to work constructively with its creditors to propose a plan of reorganization."  *See U.S. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 370 (5th Cir. 1987) (hereinafter, "*Timbers I*") (citing H.R. Rep. No. 95-595, as reprinted in 1978 U.S.C.C.A.N. 5963, 6135) (internal quotations omitted); s*ee also Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo*

---

[2] The Debtor provided profit and loss statements to the Lender prior to the Petition Date.  The profit and loss statements for 2019 and 2020 are attached to the Fishkind Declaration as **Exhibit Q** and **Exhibit R**, respectively.

*Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012); *In re Nw. Timberline Enters., Inc.*, 348 B.R. 412, 429 (Bankr. N.D. Tex. 2006).  The Fifth Circuit has recognized, however, that a breathing spell is not in some circumstances warranted:

> The continuance of the automatic stay contemplates a debtor that is reorganizable and that is actively pursuing that goal.  Where there is no reasonable likelihood of reorganization or where the debtor unreasonably delays in its efforts to reorganize, the Bankruptcy Code affords several avenues for relief to all creditors, secured as well as unsecured.

*Timbers I*, 808 F.2d at 370.

31.    Although a motion for relief from stay is often filed after a debtor has failed to take any action toward filing a plan, the U.S. Supreme Court has recognized that relief from the automatic stay may be granted early in a bankruptcy case and prior to the end of the exclusivity period.  *See United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) (hereinafter, "*Timbers II*").  Additionally, as the Fifth Circuit has noted, because "the vast majority of Chapter 11 cases do not end with confirmed plans … the challenge to the bankruptcy court is to recognize those cases as promptly as possible and limit the administrative expenses and costs borne by the creditors."  *See Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 577 (5th Cir. 1991) (*citing Timbers I*, 808 F.2d at 373 n.17).  As explained in detail below, given the Debtor's inability to demonstrate that the Property is essential for an effective reorganization, the Lender is timely and appropriately filing the Motion before the Debtor's exclusive period for filing a plan of reorganization has expired.

**A.      Cause Exists to Grant Relief from the Automatic Stay under Bankruptcy Code Section 362(d)(1).**

Bankruptcy Code section 362(d)(1) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).  Bankruptcy Code section 362(d) "gives bankruptcy courts flexibility to address specific exigencies on a case-by-case basis." *See Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 303-04 (5th Cir. 2005); *see also Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002) ("The bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code."); *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988) ("Cause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-intensive situations."); *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 780 (S.D. Tex. 1986) ("In sum, a bankruptcy court must be guided by equitable principles in exercising its discretion to enforce or modify the automatic stay."); *In re Choice ATM Enters.*, No. 14-44982-DML, 2015 WL 1014617, at *5 (Bank. N.D. Tex. March 4, 2015).

33.      Cause exists in this case to grant relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) because, *inter alia*: (1) the Debtor filed this bankruptcy case in bad faith; (2) the Lender's interest is not adequately protected; and (3) granting relief from the stay would avoid needless legal fees and expenses which otherwise would only serve to detract value from the Lender's recovery and add to the obligations of the Debtor.

34.     Once a movant makes a *prima facie* case that cause exists to lift the stay, the burden shifts to the debtor to show that the collateral is not declining in value or that the secured creditor is adequately protected.  *See* 11 U.S.C. § 362(g); *see also In re Rogers*, 239 B.R. 883, 886-87 (Bankr. E.D. Tex. 1999).  As demonstrated below, the Debtor has not satisfied its burden of proving that the Property is not declining in value or that the Lender is adequately protected. Accordingly, the automatic stay should be lifted so that the Lender may exercise its rights under state law.  *See In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 726-28 (5th Cir. 1991) (affirming district court's relief from stay order).

        1.      Debtor Filed This Chapter 11 Case in Bad Faith.

35.     Cause exists because the Debtor brought this bankruptcy case in bad faith.  Bad faith can constitute cause for lifting the automatic stay.  *See, e.g., In re Reitnauer*, 152 F.3d 341, 343-44 (5th Cir. 1998); *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995); *In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012).  The analysis of bad faith under section 362(d) proceeds in much the same way as the analysis of whether to dismiss a case for cause under section 1112(b).  *See Trident*, 52 F.3d at 131.  The good faith requirement serves to balance the interests of the debtors and creditors.  As the Fifth Circuit noted:

> [The good faith requirement] furthers the balancing between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes.   Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those debtors and creditors with "clean hands."

36. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); s*ee also Elmwood Dev. Co. v. Gen. Elec. Pension Trust (In re Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992); *In re McMahan*, 481 B.R. 901, 921-22 (Bankr. S.D. Tex. 2012).

37. Good faith generally is held to require "honesty of intention." *See In re Metro. Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) ("'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose."); *In re CorrLine Int'l, LLC*, 516 B.R. 106, 141 (Bankr. S.D. Tex. 2014) (same).

38. Findings of bad faith are based upon an overall review of the circumstances on a case-by-case basis. *See Little Creek*, 779 F.2d at 1072. Although there is no particular test for determining whether a debtor has filed a petition without honest intentions, courts generally conduct a balancing test and "consider any factors which evidence an 'intent to abuse the judicial process of the reorganization provisions' or, in particular, factors which evidence that the case was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Boughton*, 243 B.R. 830, 834 (Bankr. M.D. Fla. 2000) (internal citations omitted); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

39. Recurrent factors indicating a bad faith filing include:

    i.    the debtor has only one asset, which is subject to a lien;

    ii.    the debtor engaged in improper prepetition conduct;

    iii.    the debtor can identify only a few unsecured creditors or has only a few unsecured creditors whose claims are small in relation of the claims of the secured creditors;

    iv.    the lender had filed a complaint for a receiver as a result of arrearages on the debt and it is unlikely that the debtor would have been successful in defending against the appointment of a receiver in state court;

    v.    bankruptcy offers the only possibility of forestalling loss of property;

vi.    the debtor has few employees or no employees except for the principals;

vii.   the debtor's financial problems involve essentially a dispute between the debtor and the secured creditor;

viii.  the debtor has little or no cash flow;

ix.    the debtor has no available sources of income to sustain a plan of reorganization;

x.     the debtor has no ongoing business or is not engaged in significant business activities;

xi.    the lack of possibility of reorganization;

xii.   the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce its rights; and

xiii.  the debtor filed solely to create the automatic stay

*See*, *e.g.*, *Little Creek*, 779 F.2d at 1072-73 (applying six factors); *Phoenix Piccadilly,* 849 F.2d at 1394-1395 (applying six factors); *In re 1701 Commerce*, 477 B.R. at 657-58 (listing seven factors); *1020 Warburton Ave. Realty Corp.*, 127 B.R. 333, 335 (Bankr. S.D.N.Y.  1991) (applying seven factors); *In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986) (listing several factors).  Furthermore, courts have held that a chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose.  *Off. Comm. of Unsecured Creditors v. Nucor Corp*. (*In re SGL Carbon Corp*.), 200 F.3d 154, 165 (3d Cir. 1999).

40.    The Lender submits that the automatic stay should be lifted for cause because most of the enumerated "bad faith factors" are satisfied in this case.

a.    *The Debtor Has Only One Asset – the Property – Which is Subject to a Lien*.

41.    The Debtor's only meaningful asset is an undivided interest in the Property.  The Property, in turn, is subject to the Deed of Trust, the Note, and the ALR.  Moreover, the Debtor concedes that it has no equity in the Property.

> b.      *The Debtor Can Identify Only a Few Unsecured Creditors or Has Only a Few Unsecured Creditors Whose Claims are Small in Relation to the Claims of the Secured Creditors.*

42.     The Lender's secured claim amounts to more than $9,500,000 as of the Petition Date.  In its schedules, the Debtor identify ten unsecured creditors with claims totaling $274,075.24, which is less than 3% of Lender's claim.

> c.      *There is No Possibility of Reorganization.*

43.     The Lender is significantly undersecured.  The whole of the Debtor's interest in the Property is subject to the Lender's lien on the Property.  Quite simply, there are no assets to distribute to unsecured creditors, and the Debtor's wildly speculative budget shows that no possibility of reorganization exists.  The only purpose this bankruptcy proceeding will serve is to accrue legal fees and expenses which will detract from the Lender's recovery.  No party or persons will benefit, with the exception of the Debtor who is attempting to stall the inevitable lawful foreclosure on the Property.

> d.      *Bankruptcy Offers the Only Possibility of Forestalling Loss of the Property.*

44.     Because of the Debtor's default under the Loan Documents, the Loan was properly accelerated prepetition.  Given that (i) the Lender has a priority lien on the Property superior to all other creditors, (ii) the Debtor's assets are subject to the Loan, (iii) the Loan is in default and was accelerated, and (iv) the Receiver Application was properly filed and was in the process of being served, bankruptcy protection was the Debtor's only alternative to forestall the loss of the Property through the appointment of a receiver.

> e.      *The Timing and Nature of the Debtor's Filing Evinces an Intent to Delay or Frustrate the Lender's Efforts to Enforce Its Rights.*

45.     As previously discussed, the Debtor filed for protection in this bankruptcy proceeding shortly after the Receiver Application was filed.  The circumstances and timing suggest that the Debtor filed only to prevent the Lender from properly exercising the Lender's state law rights.

> g.     *The Debtor Filed Solely to Invoke the Protections of the Automatic Stay.*

46.     Upon information and belief, the Debtor filed this bankruptcy proceeding not for a "breathing spell," but rather to forestall, by virtue of the automatic stay, the Lender's efforts to appoint a receiver for the Property.

> h.     *The Debtor Engaged in Improper Prepetition Conduct.*

47.     Debtor breached the Loan Agreement, the Deed of Trust, and/or the Note by causing a UCC Financing Statement to be filed evidencing other indebtedness and the pledging and/or granting of liens against the Property purportedly by a secured party (U.S. Small Business Administration) other than Lender's predecessor-in-interest.

48.     Debtor further breached the Loan Agreement, the Deed of Trust, and/or the Note by failing to pay County Hotel Occupancy Taxes due the Harris County Sports Authority levied upon the cost of occupancy of sleeping rooms furnished by hotels, such as Debtor, and as a result of such nonpayment, causing a lawsuit and default judgment to be entered against Debtor.

49.     Upon information and belief, Debtor has used cash flow from the Property to fund the PIP Lawsuit without Lender's consent.

50.     Debtor has thus failed to safeguard the Property and has demonstrated its inability to properly manage the Property and protect Lender's interest in the Property.

51.     These factors, taken together, strongly support the contention that the filing of this case represents a misuse of the Bankruptcy Code.  Therefore, Lender should be granted relief from the automatic stay to pursue a state law foreclosure sale.

        2.     The Lender's Interest in the Property Is Not Adequately Protected.

52.     There is cause under Bankruptcy Code section 362(d)(1) for the court to grant the Lender relief from the automatic stay because the Lender's interest in the Property is not adequately protected.

        i.     *No Equity Cushion Exists.*

53.     No equity cushion exists in the Property.  An "equity cushion is 'the value of the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect.'"  *In re WorldCom, Inc.*, No. 02-13533, 2003 WL 22025051, at *5 (Bankr. S.D.N.Y. Jan. 30, 2003) (*quoting In re New Era Co.*, 125 B.R. 725, 728-29 (S.D.N.Y. 1991)); *see also In re Nw. Timberline Enters.*, 348 B.R. at 429 n.27 (citing *Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327, 329 (5th Cir. 1990)).  The debt to the Lender is more than $9,500,000.  In its Schedules, the Debtor values the Real Estate at $8,000,000 and related personal property at $393,990 for a total value of $8,393,990 [Docket No. 30].  The Debtor thus concedes that it has no equity in the Property.

        j.     *The Debtor is Not Providing Full Performance to Lender under the Note and Deed of Trust.*

54.     Since December 2020, the Debtor has failed to make any principal and interest payments required under the Note and to make any deposits into the reserve accounts as required under the Loan Documents.  Furthermore, no other party has made such payments on behalf of the Debtor, and there are no assurances that future payments or deposits will be made.  *See In re*

*Nattchase Assoc. Ltd. P'ship*, 178 B.R. 409, 416 (Bankr. E.D. Va. 1994) (noting it is appropriate to lift the automatic stay where debtor fails to pay its secured creditor and only a small or no equity cushion exists); *In re Richardson Group, Inc.*, 107 B.R. 353, 354-56 (Bankr. M.D. Fla. 1989) (same).

> k.  *Lack of Tax Reserve Payments and Insurance Reserve Payments Further Jeopardize Lender's Interest.*

55.     Debtor has failed to make Tax Reserve Payments and Insurance Reserve Payments since December 2020.  While 2020 property taxes were paid in January 2021, 2021 property taxes are accruing.  If the Debtor successfully holds on to the Property through this year, it will be faced with a $63,000 tax bill with no reserves available to pay it.  Without an adequate equity cushion, the Debtor cannot provide Lender with adequate protection vis-à-vis the property taxes.  *Id.*; *see also In re Knight Energy Corp.*, 2009 Bankr. LEXIS 1841, at *9 (U.S. Bankr. N.D. Tex. June 26, 2009) (granting relief from the automatic stay for cause because the secured creditor lacked adequate protection where the debtor had "not paid property taxes . . . cannot come close to making debt service . . . [and had only] a few thousand dollars in the bank.")).  The Debtor's failure to deliver any Tax Reserve Payments from December 2020 to present likely leaves the Debtor ultimately unable to pay the property taxes for the Property.

56.     In total, reserve payments are due monthly in the amount of approximately $28,100, and no such reserve payments have been received in seven months.  Accordingly, the reserve accounts are now underfunded.

57.     Outside of the bankruptcy context, it is these accounts that provide Lender with additional security with respect to its interest in the Property, such as by ensuring taxes are paid, adequate insurance is maintained, and necessary repairs can be paid.  Within the bankruptcy context, the lack of reserve funds leaves Lender without adequate protection as required by

Bankruptcy Code section 363(e), especially with respect to a cash-strapped Debtor. Accordingly, this Court should grant this Motion for relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.  Alternatively, should the Court not grant the Motion, it should require the Debtor to provide adequate protection of Lender's interest in the Property as required by Bankruptcy Code section 363(e).

58.     Therefore, the Lender's interest in its collateral is not adequately protected during the time the automatic stay remains in effect, and the Lender's recovery remains in jeopardy.

59.     Granting Relief From the Automatic Stay Will Avoid Needless Costs Which Would Otherwise Serve to Deplete the Estate.

60.     Granting relief from the automatic stay so that the Lender can foreclose on the Property will avoid costs that continuing this bankruptcy proceeding necessarily will accrue. First, the Lender has serious and legitimate concerns that the value of the Property is insufficient to cover the Lender's claim.  Second, every day that this bankruptcy proceeding continues, additional costs of administering the case are incurred, which can and should be eliminated in their entirety.  Third, there are delays and costs involved in pursuing a restructuring process via this bankruptcy proceeding rather than enabling immediate foreclosure by the Lender on the Property.

**B.      Relief From the Automatic Stay Is Justified Per Section 362(d)(2) Because the Debtor Has No Equity in the Property and the Property Is Not Necessary to an Effective Reorganization.**

Bankruptcy Code section 362(d)(2) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against property under subsection (a) of this section if—

  (A)  the debtor does not have an equity in such property; and

  (B)  such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

  61.  A secured creditor seeking relief from the automatic stay under section 362(d)(2) bears the burden of proof on one issue only: lack of equity in the collateral. *See* 11 U.S.C. § 362(g)(1); *see also Timbers II*, 484 U.S. at 375; *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987); *In re Playa Dev. Corp.*, 68 B.R. 549, 553 (Bankr. W.D. Tex. 1986); *In re Cal. Gulf P'ship*, 48 B.R. 959, 963 (E.D. La. 1984). The debtor bears the burden on the remaining issue: whether the property is necessary for an effective reorganization. *See* 11 U.S.C. § 362(g)(2). Once a lack of equity in the property is established, the burden shifts to the debtor to demonstrate that the property is necessary to an effective reorganization. *See Timbers II*, 484 U.S. at 375-76; *Canal Place*, 921 F.2d at 576. If a debtor is unable to carry its burden, relief from the automatic stay must be granted. Where a debtor fails to establish a reasonable prospect for a successful reorganization, relief from the automatic stay is appropriate. *See Canal Place*, 921 F.2d at 577; *Sutton v. Bank One (In re Sutton)*, 904 F.2d 327, 331 (5th Cir. 1990) (concluding the debtor cannot file bankruptcy to stop foreclosure and wait for more favorable conditions).

  62.  As set forth above, Debtor has conceded in its Schedules that it lacks equity in the Property. *See supra* at 19. As such, the burden shifts to the Debtor to demonstrate that the Property is necessary to an effective reorganization, and the Debtor cannot satisfy such burden.

  63.  The Debtor's burden is not merely to demonstrate that it is conceivable to reorganize, but rather that the Property is "essential for an effective reorganization *that is in prospect*." *See Timbers II*, 484 U.S. at 375-76 (emphasis in original). To prevail against a secured creditor who has moved to lift the stay under section 362(d)(2), a debtor must do more

than show "high hopes."   It must be able to show a reasonable prospect for a successful standalone reorganization within a reasonable time.   *See Timbers I*, 808 F.2d at 370; *see also In re Three Strokes Ltd. P'ship*, 397 B.R. 804, 809 (Bankr. N.D. Tex. 2008) ("Fifth Circuit instructs that 'necessary to an effective reorganization' means there must be a reorganization that is reasonably in prospect for the Debtor—not simply a pipe dream.") (quoting *Timbers I*, 808 F.2d at 370-71).   Standalone reorganization must be realistically possible, and the mere fact that the property is indispensable to the debtor's survival is insufficient.   *See, e.g.*, *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 673 n.7 (11th Cir. 1984); *see also Timbers I*, 808 F.2d. at 371.   Here, the Property is fully encumbered by the Lender's security interests, and the Property *cannot* be essential to *any* prospective reorganization plan.

64.     For the reasons mentioned above, the Lender respectfully submits that this bankruptcy proceeding is an abuse of the reorganization provisions of the Bankruptcy Code, and therefore, the Court should grant the Lender relief from the automatic stay.

## VI.     WAIVER OF STAY PURSUANT TO BANKRUPTCY RULE 4001(a)(3)

65.     Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*."   Fed. R. Bankr. P. 4001(a)(3) (emphasis added).   If the Court grants the Motion, the Lender asks that the Court also waive this provision of the rules and allow the stay to terminate immediately.

66.     Because the Debtor filed this case for the illegitimate purpose of stymying the Lender's bargained-for rights, the Lender should be permitted to exercise its state law rights immediately to avoid risking further diminution of the value of its Collateral.   Accordingly, the Lender requests that the Court waive the stay in order to avoid Lender suffering any additional harm.

## VII.   NO PRIOR REQUEST

67.     No previous request for the relief sought in this Motion has been made to this or any other court.

## VIII.   CONCLUSION

In light of the foregoing, the Lender respectfully requests that the Court (i) enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the Lender relief from the automatic stay to exercise its rights and remedies under state law, (ii) waiving the stay provided by Bankruptcy Rule 4001(a)(3), and (iii) granting the Lender such other and further relief to which it shows itself to be justly entitled.   In the alternative, Lender requests that the Court require the Debtor to provide sufficient adequate protection to protect Lender's interest in the Property.

Dated: August 3, 2021                              Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: */s/ Charles R. Gibbs*
Charles R. Gibbs (Texas State Bar No. 07846300)
Debbie Green (Admitted *Pro Hac Vice*)
Eric C. Seitz (Texas State Bar No. 24067863)
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201
Telephone: 469.715.4979
Facsimile: 972.692.7700
crgibbs@mwe.com
dgreen@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC**

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with Local Rule 4001-1(a)(1), the undersigned certifies that the parties met and conferred to attempt to resolve this dispute.  The parties were unable to resolve the matters herein.

*/s/ Debbie E. Green*
Debbie E. Green

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 3, 2021, I caused a true and correct copy of the foregoing document was served via ECF on all parties requesting notice and via United States mail, postage prepaid to the parties listed on the attached Service List.

*/s/ Eric C. Seitz*
Debbie E. Green

# SERVICE LIST

| Relationship | Company/Firm | Contact Name | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| Debtor | Kornbluth Texas, LLC | | W Bay Area Blvd | Webster | TX | 77598 |
| | Margaret M. McClure | | | | | |
| Counsel to Debtor | | | 25420 Kuykendahl Road, Suite B300-1043 | The Woodlands | TX | 77375 |
| Creditor | Texas Comptroller of Public Accounts | c/o Office of Attorney General | PO Box 12548 | Austin | TX | 78711-2548 |
| Creditor | Texas Comptroller of Public Accounts | | PO Box 149359 | Austin | TX | 78714-9359 |
| Creditor | Texas Comptroller of Public Accounts | | 111 E. 17th Street | Austin | TX | 78774-0100 |
| Creditor | Synchrony Bank | c/o PRA Receivables Management, LLC Valerie Smith | PO Box 41021 | Norfolk | VA | 23541 |
| U.S. Trustee | U.S. Trustee (Houston) | Office of the United States Trustee | 515 Rusk Avenue, Suite 3516 | Houston | TX | 77002 |
| | Harris County | Linebarger Goggan Blair & Sampson, LLP | | | | |
| Creditor | Harris County | John P. Dillman | PO Box 3064 | Houston | TX | 77253-3064 |
| Creditor | Harris County | | PO Box 3547 | Houston | TX | 77253-3537 |
| Creditor | Harris County | | PO Box 4622 | Houston | TX | 77210-4622 |
| Creditor | Clear Creek Independent School District | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. Melissa E. Valdez | 1235 North Loop West, Suite 600 | Houston | TX | 77008 |
| United States Attoney for Southern District of Texas | Assistant United States Attorney for Southern District of Texas | Richard A. Kincheloe Jennifer B. Lowery | 1000 Louisiana Street, Suite 2300 | Houston | TX | 77002 |
| Creditor | Holiday Hospitality Franchising, LLC | Alston & Bird LLP David A. Wender | One Atlantic Center, 1201 W. Peachtree Street | Atlanta | GA | 30309-3424 |
| Creditor | Holiday Hospitality Franchising, LLC | Alston & Bird LLP Leib M. Lerner Douglas J. Harris | 333 S. Hope Street, 16th Floor | Los Angeles | CA | 90071 |
| Guarantor to Loan to Debtor | Cheryl Tyler | | 302 W. Bay Area Blvd | Webster | TX | 77598 |
| Guarantor to Loan to Debtor | William Kornbluth | | 57444 Bandera Road | Yucca Valley | CA | 92284 |
| Creditor | U.S. Small Business Administration | Richard A. Kincheloe Jennifer B. Lowery Assistant U.S. Attorney for Southern District of Texs | 1000 Louisiana Street, Suite 2300 | Houston | TX | 77002 |
| Creditor | City of Webster | | 101 Pennsylvania Avenue | Webster | TX | 77598 |
| Creditor | Coca Cola | | PO Box 1827 | Brandon | FL | 33511 |
| Creditor | Elevator Transportation Services, Inc./ETS | | PO Box 1543 | Pasadena | TX | 77501 |
| Creditor | Gordon | | 11303 Antoine Drive | Houston | TX | 77066 |
| Creditor | Pension Planners | | 1600 Valley River Drive, #340 | Eugene | OR | 97401 |
| Creditor | Quantum Pest Control | | PO Box 1090 | Alief | TX | 77411 |
| Creditor | Voya Retirement | | 5780 Powers Ferry Road NW | Atlanta | GA | 30327 |