# EXHIBIT D

**KORNBLUTH TEXAS, LLC**, as assignor

(Borrower)

to

**RIALTO MORTGAGE FINANCE, LLC**, as assignee

(Lender)

## ASSIGNMENT

## OF LEASES AND RENTS

Dated:     October 21, 2016

Location:     302 Bay Area Boulevard
Webster, Texas

County:     Harris

PREPARED BY AND UPON
RECORDATION RETURN TO:

Sills Cummis & Gross, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Attention: Robert R. Hempstead, Esq.

3121425 v3 Assignment of Leases and Rents - Webster, TX

THIS ASSIGNMENT OF LEASES AND RENTS (this "**Assignment**") made as of the 21st day of October, 2016, by **KORNBLUTH TEXAS, LLC**, a Texas limited liability company, as assignor, having an address at 302 W. Bay Area Boulevard, Webster, Texas 77598 ("**Borrower**") to **RIALTO MORTGAGE FINANCE, LLC**, a Delaware limited liability company, having an address at 600 Madison Avenue, 12th Floor, New York, New York 10022, as assignee ("**Lender**").

## RECITALS:

WHEREAS, this Assignment is given in connection with a loan in the principal sum of **EIGHT MILLION THREE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($8,350,000.00)** (the "Loan") made by Lender to Borrower pursuant to that certain Loan Agreement, dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by the Note (as defined in the Loan Agreement). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

WHEREAS, Borrower desires to further secure the payment of the Debt and the performance of all of its obligations under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents.

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Assignment:

## ARTICLE 1
## ASSIGNMENT

Section 1.1   PROPERTY ASSIGNED.   Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:

(a)   Leases. All existing and future leases affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit A annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (collectively, the "**Property**") and the right, title and interest of Borrower, its successors and assigns, therein and thereunder.

(b)   Other Leases and Agreements. All other leases, subleases and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, whether made before or after the filing by or against Borrower of any petition for relief under any Bankruptcy Law together with any extension, renewal or replacement of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment. The leases described in Section 1.1(a) and the leases and other agreements described in this Section

RP-2016-481295

1.1(b), together with all other present and future leases and present and future agreements and any extension or renewal of the same are collectively referred to as the "**Leases**."

(c)   Rents.   All rents, additional rents, payments in connection with any termination, cancellation or surrender of any Lease, revenues, income, issues and profits arising from the Leases and renewals and replacements thereof and any cash or security deposited in connection therewith and together with all rents, revenues, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under Bankruptcy Laws (collectively, the "**Rents**").

(d)   Bankruptcy Claims.   All of Borrower's claims and rights (the "**Bankruptcy Claims**") to the payment of damages arising from any rejection by a lessee of any Lease under Bankruptcy Laws.

(e)   Lease Guaranties.   All of Borrower's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "**Lease Guarantor**", collectively, the "**Lease Guarantors**") to Borrower (individually, a "**Lease Guaranty**", collectively, the "**Lease Guaranties**").

(f)   Proceeds.   All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(g)   Other.   All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(h)   Entry.   The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

(i)   Power of Attorney.   Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(j)   Other Rights and Agreements.   Any and all other rights of Borrower in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Section 1.2   TERMINATION OF ASSIGNMENT.   Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of the Security Instrument duly

executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

## ARTICLE 2
## TERMS OF ASSIGNMENT

Section 2.1  PRESENT ASSIGNMENT AND LICENSE BACK. It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, the Loan Agreement and the Cash Management Agreement, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and other sums due under the Lease Guaranties. Borrower shall hold the Rents and all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

Section 2.2  NOTICE TO LESSEES. Borrower hereby authorizes and directs the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties or upon receipt from Lender of written notice to the effect that Lender is then the holder of this Assignment and that an Event of Default exists, and to continue so to do until otherwise notified by Lender.

Section 2.3  INCORPORATION BY REFERENCE. All representations, warranties, covenants, conditions and agreements contained in the Loan Agreement and the other Loan Documents as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3
## REMEDIES

Section 3.1  REMEDIES OF LENDER. Upon the occurrence and during the continuance of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property. In addition, Lender may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender and may apply the Rents and sums

RP-2016-481295

received pursuant to any Lease Guaranties to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence and during the continuance of an Event of Default, Lender, at its option, may (1) at Borrower's expense, complete any construction on the Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Borrower, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease Guaranties, and (3) either require Borrower to (x) pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (y) vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

Section 3.2 OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Loan Agreement, the Note, the Security Instrument, or the other Loan Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Loan Agreement, the Note, the Security Instrument, the other Loan Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Loan Agreement, the Note, the Security Instrument, or any of the other Loan Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

Section 3.3 OTHER SECURITY. Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

Section 3.4  NON-WAIVER. The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and sums due under the Lease Guaranties and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Loan Agreement, the Note, the Security Instrument, the Leases, this Assignment or the other Loan Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Loan Agreement, the Note, the Security Instrument or the other Loan Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Loan Agreement, the Note, the Security Instrument or the other Loan Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

Section 3.5  BANKRUPTCY. (a) Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under Bankruptcy Laws.

(b)  If there shall be filed by or against Borrower a petition under Bankruptcy Laws, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to any applicable provision of any Bankruptcy Law, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to any applicable provision of any Bankruptcy Law, and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

# ARTICLE 4
# NO LIABILITY, FURTHER ASSURANCES

Section 4.1  NO LIABILITY OF LENDER. This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in

RP-2016-481295

any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees to, indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the other Loan Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the other Loan Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Substances, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2   NO MORTGAGEE IN POSSESSION. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

Section 4.3   FURTHER ASSURANCES. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to file one or more financing statements or execute in the name of Borrower to the extent Lender may lawfully do so, one or more chattel mortgages or other instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

# ARTICLE 5
# MISCELLANEOUS PROVISIONS

Section 5.1   CONFLICT OF TERMS.  In case of any conflict between the terms of this Assignment and the terms of the Loan Agreement, the terms of the Loan Agreement shall prevail.

Section 5.2   NO ORAL CHANGE.  This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 5.3   CERTAIN DEFINITIONS.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees" and "counsel fees" shall include any and all reasonable attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, reasonable fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 5.4   INAPPLICABLE PROVISIONS.  If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 5.5   DUPLICATE ORIGINALS; COUNTERPARTS.  This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.  This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment.  The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 5.6   GOVERNING LAW.   (A) THIS ASSIGNMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

RP-2016-481295

(B) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS ASSIGNMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

Section 5.7 NOTICES. All notices or other written communications required or permitted hereunder shall be given and shall become effective in accordance with Section 9.6 of the Loan Agreement.

Section 5.8 WAIVER OF TRIAL BY JURY. BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 5.9 LIABILITY. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 5.10 HEADINGS, ETC. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 5.11 NUMBER AND GENDER. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 5.12 EXCULPATION. The provisions of Section 8.6 of the Loan Agreement are hereby incorporated by reference into this Assignment to the same extent and with the same force as if fully set forth herein.

### ARTICLE 6
### STATE SPECIFIC PROVISIONS

Section 6.1 INCONSISTENCIES. In the event of any inconsistencies between the terms and conditions of this Article 6 and the other provisions of this Assignment, the terms and conditions of this Article 6 shall control and be binding.

RP-2016-481295

Section 6.2  TARA. Notwithstanding anything to the contrary contained herein, (i) Lender is entitled to all the rights and remedies of an assignee set forth in Chapter 64 of the Texas Property Code, the Texas Assignment of Rents Act ("TARA") and (ii) Lender's interest in the Leases and Rents, and its realization thereon, is governed by and subject to TARA. This document shall constitute and serve as a security instrument under TARA. Lender shall have the ability to exercise its rights related to the Leases and Rents, in Lender's sole discretion and without prejudice to any other remedy available, as provided in this document or as otherwise allowed by applicable law, including, without limitation, TARA.

**[NO FURTHER TEXT ON THIS PAGE]**

RP-2016-481295

IN WITNESS WHEREOF, Borrower has executed this instrument the day and year first above written.

          **KORNBLUTH TEXAS, LLC**, a Texas limited liability company

By: _____
Name: Cheryl Tyler
Title: Manager

RP-2016-481295

ACKNOWLEDGMENTS

STATE OF Oregon )

) ss.:

COUNTY OF Lane )

On the 17 day of October, 2016, before me, the undersigned, a Notary Public in and for said State, personally appeared Cheryl Tyler, Manager of KORNBLUTH TEXAS, LLC, a Texas limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.



Kayla Weaver

Notary Public for the State of Texas Oregon
My commission expires: March 31, 2020

RP-2016-481295

# EXHIBIT A

(Description of Land)

Fee Parcel

Tract 1:

Unrestricted Reserve "C", Block 1, of One Bay Area Plaza, Harris County, Texas recorded under Film Code Number 612277 of the Map Records of Harris County, Texas; and

Easement:

TOGETHER WITH easement described in Easement Agreement, dated December 21, 2006, executed by and between Bay Area 4.5, Ltd., and Webster Hotel, LLC., as set forth in instrument(s) recorded at Harris County Clerk's File No. 20060296799 corrected by 20080242828 of the Real Property Records of Harris County, Texas. As shown and noted on survey prepared by Prime Texas Surveys, dated September 30, 2016; Job No. 161190.

TOGETHER WITH easement described in Easement Agreement, dated dated December 6, 2007, executed by and between Bay Area 4.5, Ltd., and Webster Hotel, LLC., as set forth in instrument recorded at Harris County Clerk's File No. 20070727577 of the Real Property Records of Harris County, Texas and ratified by Narendra Maran, as set forth in Ratification of Plat and Easement Agreement recorded under Clerk's File No. 20080242827 of the Real Property Records of Harris County, Texas. As shown and noted on survey prepared by Prime Texas Surveys, dated September 30, 2016; Job No. 161190.

RP-2016-481295
# Pages 14
10/25/2016 01:02 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees $64.00

RP-2016-481295

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

*Stan Stanart*
COUNTY CLERK
HARRIS COUNTY, TEXAS