UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| KORNBLUTH TEXAS, LLC, | § | Case No. 21-32261 (CML) |
| | § | |
| Debtor | § | |

### AGREED ORDER AND STIPULATION AUTHORIZING
### DEBTOR TO USE CASH COLLATERAL ON A FINAL BASIS

Kornbluth Texas, LLC, the above-captioned debtor and debtor in possession (the "Debtor") and WFCM 2016-LC25 West Bay Area Boulevard, LLC ("Lender" and together with the Debtor, the "Parties"), acting by and through their undersigned counsel, stipulate and agree (the "Stipulated Order) as follows:

### RECITALS

A.  WHEREAS, on July 5, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1] The Debtor continues to manage its property and its business as a debtor in possession pursuant to §§ 1107 and 1108.  The Debtor's primary asset is its interest in the real property commonly known as Holiday Inn Webster and located at 302 West Bay Area Boulevard, Webster, Texas 77598 (the "Property").

B.  WHEREAS, Lender asserts that it is the holder of security interests, liens, and mortgages in all or substantially all of the Debtor's property, including, but not limited to: (i) the Property and improvements thereon; (ii) all of the Debtor's rights, title, and interests in all leases,

---

[1] Unless otherwise indicated, all section (§) references are to the Bankruptcy Code.

revenue, and rents collected therefrom; and (iii) all of the Debtor's rights, title, and interests in all buildings, structures, fixtures, inventory and personal property located thereon (collectively, the "Collateral"), as evidenced by the loan documents (collectively, the "Loan Documents"). Lender asserts that all of the Debtor's proceeds from the Collateral are cash collateral of the Lender (the "Cash Collateral") within the meaning of § 363(a).

C. WHEREAS, on September 30, 2021, the Court appointed Douglas Brickley of The Claro Group, LLC as the Chief Restructuring Officer of the Debtor ("CRO") pursuant to Bankruptcy Code section 327(a) to operate and manage the Debtor's business operations.

D. WHEREAS, the Debtor and Lender agree that it is in the best interest of the Parties and the Debtor's bankruptcy estate for the Cash Collateral to be used in accordance with the budget attached hereto as **Exhibit "A"** (as the same may be amended or modified with the express prior written consent of Lender, the "Operating Budget").

E. WHEREAS, except as otherwise stated herein, the Debtor and Lender reserve all of their respective rights against the other with respect thereto.

## STIPULATION AND ORDER

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE DEBTOR AND LENDER, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:

1. The Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral (the "Authorized Cash Collateral") of Lender on a final basis in accordance with the Operating Budget, plus a fifteen percent (15%) budgetary variance per line item with respect thereto.

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

2.  *Adequate Protection*.

(a)  *Use and Payments*.  As adequate protection for the Debtor's use of the Authorized Cash Collateral, the Debtor shall use the Authorized Cash Collateral only in accordance with paragraph 1 above.

(b)  *Adequate Protection Lien*.  Lender shall receive, as adequate protection to the extent of the diminution in value of its perfected interests in the Collateral, a replacement lien in such Collateral and in the post-petition property of the Debtor of the same nature and to the same extent and in the same priority it had in the Collateral as of the Petition Date, and to the extent such liens and security interests extend to property pursuant to Section 552(b) of the Bankruptcy Code (collectively, the "Adequate Protection Lien").  In addition, Lender shall receive a claim under Section 507(b) of the Bankruptcy Code as adequate protection to the extent of the diminution in value of its perfected interests in the Cash Collateral.

(c)  *Automatic Perfection*.  The Adequate Protection Lien shall be deemed valid, binding, enforceable, and perfected upon entry of this Stipulated Order without the need to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien, or any similar document or the need to take any other action (including possession of any of the collateral subject to the Adequate Protection Liens) in order to validate the perfection of any of the Adequate Protection Liens.  If Lender shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds, or UCC-1 financing statements, or take any other action to validate the perfection of any part of the Adequate Protection Lien, Debtor and its officers are directed to execute any documents or instruments as Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded as of the Petition Date.  Lender may, in its discretion, file a certified copy of this Stipulated Order in any filing office in each

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

jurisdiction in which the Debtor is organized or has or maintains any collateral or an office, and each filing office is directed to accept such certified copy of this Stipulated Order for filing and recording.

(d) *Superiority Claim.* Upon entry of this Stipulated Order, Lender shall be deemed to have an allowed superpriority adequate protection claim to the extent the Adequate Protection Liens are shown to be inadequate to protect Lender against the diminution in value of the Collateral (the "Superpriority Claim" together with the Adequate Protection Liens, the "Adequate Protection Obligations").

(e) *Priority.* The Adequate Protection Obligations shall have priority over all liens and administrative expenses in this case of the kind specified in or arising or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552, 726 and 1114 of the Bankruptcy Code, save and except fees and expenses owed pursuant to the Carve-Out (as defined below).

(f) As further adequate protection of Lender's interest in the Property and other Collateral, for the time period October 1, 2021 through the later of the Payoff Date or the Stay Relief Date (each as defined below), the Debtor shall make monthly cash payments to Lender in an amount equal to cash on hand as of the last business day of each month less budgeted expenses for the succeeding month plus fifteen percent (15%). Such payments shall be tendered to Lender by the fifth (5th) calendar day of each month of such excess cash on hand as of the last business day of the prior month (each such payment, an "Adequate Protection Payment"). In the event that the Debtor fails to timely make an Adequate Protection Payment without the consent of Lender, Lender shall give Debtor written notice of such default and Debtor shall have five (5) days to cure such default as set forth in paragraph 4 below.

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

(g) *Reservation of Rights*. Lender reserves the right to argue for and demand, and the Debtor reserves its right to challenge Lender's arguments and demands, additional adequate protection.

3. *Carve-Out.* Subject to the terms and conditions contained in this paragraph, the Adequate Protection Obligations shall be subject and subordinate to payment of a carve-out (the "Carve-Out"). As used in this Stipulated Order, the term "Carve-Out" shall mean: (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"); (b) actually incurred expenses included in the Operating Budget but unpaid as of the Termination Date (defined herein) of the Debtors' right to use Authorized Cash Collateral under this Stipulated Order; (c) the aggregate amount of any fees and expenses of any Court-approved estate professionals (the "Professionals") included in the Operating Budget which are actually incurred, but unpaid as of the Termination Date, but only to the extent such fees and expenses have been previously or subsequently are approved by this Court and only to the extent such incurred and unpaid fees and expenses exceed any retainer held by any such Professional at the time of such termination; and (d) after a Termination Event (defined herein), the payment of the reasonable fees and expenses of the Professionals (as accrued and regardless of whether approved and unpaid or pending approval by this Court) that are incurred and are ultimately allowed by this Court pursuant to section 330 of the Bankruptcy Code, in an aggregate amount not to exceed $50,000. In addition, the Carve-Out shall include the reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000. Prior to the Termination Date, and subject to the entry of an appropriate order of this Court (in form and substance reasonably acceptable to the Lender), the Debtor shall be authorized to use Authorized Cash Collateral to pay compensation and reimbursement of

budgeted expenses allowed and payable through and including the Termination Date in accordance with the Operating Budget, and the portion of the Carve-Out set forth in clause (d) above shall not be reduced by the amount of any compensation or reimbursement of costs and expenses accrued, incurred, awarded or paid before the occurrence of the Termination Date. To the extent the Debtor has insufficient funds to pay compensation and reimbursement of expenses through and including the Termination Date in accordance with the Operating Budget, Lender agrees: (i) to pay the shortfall from the disposition of Lender's Collateral; and (ii) the Carve-Out set forth in this Stipulated Order shall survive and remain in full force and effect regardless of whether Lender forecloses and/or sells the Collateral as provided in the Court's prior Order [ECF # 85] lifting the automatic stay. Nothing herein shall be construed to impair the ability of any party in interest to object any fees, expenses, reimbursement, or compensation sought by the Professionals, nor shall anything herein be construed to affect the rights of any party in interest to file an application for the allowance of fees and expenses.

4.  *Termination of Use of Cash Collateral.* Notwithstanding anything to the contrary contained herein, the Debtor's right to use the Cash Collateral shall expire, on the earliest to occur (the first such occurrence being hereinafter referred to as the "Termination Event") of: (i) the date Lender's claim (as agreed to between the Parties or adjuducated by the Court) is paid in full (the "Payoff Date"); (ii) December 9, 2021 (the "Stay Relief Date"); (iii) the entry of an order by this Court terminating the use of Cash Collateral; (iv) the conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (v) the appointment of a trustee or examiner; (vi) the occurrence of the effective date or consummation of a plan of reorganization; or (vii) the Debtor's non-compliance with any term or provision of this Stipulated Order and the expiration of five (5) days' notice of such alleged default and opportunity to cure.

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

5. On and after the Termination Event, Lender may, in its sole discretion, terminate any or all of Debtor's authority to use the Authorized Cash Collateral upon five (5) business days' written notice to the Debtor, the CRO, counsel to the Debtor and the U.S. Trustee (the last day of such five business day period, the "Termination Date").  From and after the Termination Date, the Debtor shall no longer, pursuant to this Stipulated Order, the Loan Documents, or otherwise, be authorized to use the Authorized Cash Collateral, except to satisfy obligations covered by the Carve-Out, unless authorized by the Court after notice and hearing, which hearing may be requested on an emergency basis from the Court, Lender agreeing to such expedited hearing on any such application on three (3) business days' notice.

6. *Financial Reporting*.  Upon written request by Lender, the Debtor shall provide Lender a written accounting of all expenses and receipts and access to the Debtor's books and records and reports and information specified in the Loan Documents.

7. *No Challenges*.  Except as otherwise provided below, in consideration of Lender's agreements hereunder, the Debtor has waived and shall be barred from: (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset, or subordinate any of the Debtor's debt to Lender with respect to the Collateral or Lender's pre-petition liens with respect to the Collateral; and (ii) from asserting any other claims or causes of action against Lender.

8. *No Administrative Expenses to be Charged Against Postpetition Collateral Without Hearing*.  Except as provided pursuant to the Carve-Out, no costs or expenses chargeable or alleged to be chargeable against the Collateral under Bankruptcy Code section 506(c) shall be incurred in this or any subsequent proceedings without the prior authorization of the Court after notice to Lender and an actual hearing.  Nothing contained in this Stipulated Order or otherwise, and no

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

action or inaction of Lender shall be deemed to be a consent by Lender to any charge, lien, assessment, or claim against the Collateral under § 506(c) or otherwise.

9. Except as otherwise ordered by the Court, and subject to the Carve-Out, the liens granted pursuant to this Stipulated Order shall have priority over all costs or expenses of administration that have been or may be incurred in this proceeding, or in any conversion of this proceeding pursuant to § 1112 or otherwise, or in any other proceeding related thereto. No priority claims are or will be prior to or on parity with the claims of Lender against the Debtor or any successor debtor in possession or trustee or with the security interests, liens, and mortgages of Lender upon the Collateral. Except as expressly set forth in the Operating Budget, or approved by the Court, no such cost or expense of administration shall be imposed against the Collateral. Nothing herein shall permit Lender to recover or recoup from any holder of an administrative claim who has been paid as budgeted in accordance with this Stipulated Order.

10. *Maintenance of Property*. The Debtor shall use its best efforts to maintain and keep the Property and all other property constituting the Collateral in good repair and condition, make all necessary replacements thereof, operate the Property safely, efficiently, and in compliance with all applicable laws, codes, and ordinances, and not commit any waste in connection with any Collateral or operation of the Property.

11. The Debtor shall maintain insurance on the Property as required by the Loan Documents (covering such risks in such reasonable amounts as is customary in the Debtor's industry), and, at Lender's request, deliver to Lender evidence of the maintenance of such insurance.

12. *Escrows*. The Debtor shall accrue monies for the payment of taxes and insurance on the Property in the amounts provided for in the Operating Budget.

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

13. *Reservation of Rights*.  Any provision of this Stipulated Order to the contrary notwithstanding, the Debtor and Lender reserve their respective rights to assert objections to claims and the amounts thereof, and to assert adverse claims, or claims for affirmative relief one against the other.  Further, the Debtor and Lender reserve their respective rights to determine or clarify what constitutes the Debtor's "cash collateral" (as that term is defined in Bankruptcy Code section 363(a)).

14. *Survival*.  The priorities in payments, liens, and security interests granted pursuant to this Stipulated Order shall continue in this case, or to the extent applicable, any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payments, liens, and security interests shall maintain their priority as provided by this Stipulated Order until the liens are indefeasibly satisfied in full by their terms and discharged, and Lender shall have no further obligation or financial accommodation to the Debtor.

15. The provisions of this Stipulated Order shall inure to the benefit of the Debtor and Lender, and shall be binding upon (i) the Debtor and its respective successors and assigns, including any fiduciaries hereafter appointed as legal representatives of the Debtor or with respect to property of the estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and (ii) all creditors of the Debtor and other parties in interest.

16. *Effectiveness*.  This Stipulated Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

17. The Court shall retain jurisdiction with respect to all matters arising from or related to this Stipulated Order.

_____
UNITED STATES BANKRUPTCY JUDGE

DM_US 181057912-1.111858.0024
4843-4781-2350, v. 4

AGREED AND CONSENTED TO:

**OKIN ADAMS LLP**

By:   /s/ *Matthew S. Okin*
      Matthew S. Okin
      Texas Bar No. 00784695
      Email: mokin@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      Email: roconnor@okinadams.com
      1113 Vine Street, Suite 240
      Houston, Texas 77002
      Tel: (713) 228-4100
      Fax: (888) 865-2118

**PROPOSED COUNSEL TO THE DEBTOR**


**MCDERMOTT WILL & EMERY LLP**

/s/    *Eric C. Seitz*
Charles R. Gibbs (TX Bar No. 07846300)
Eric C. Seitz (TX Bar No. 24067863)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: 469.715.4979
Fax: 972.692.7700
crgibbs@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC**

**EXHIBIT A**

**OPERATING BUDGET**

DM_US 181057912-1.111858.0024

**Kornbluth Texas, LLP**
Case 21-32261
Four Week Cash Flow

|  | Week Ending 10/8/2021 | Week Ending 10/15/2021 | Week Ending 10/22/2021 | Week Ending 10/29/2021 | Totals |
|---|---:|---:|---:|---:|---:|
| **Cash Receipts** | $ 46,500 | $ 46,500 | $ 46,500 | $ 46,500 | $ 186,000 |
| **Cash Disbursements** | | | | | |
| Employee Payroll | $ 24,500 | $ - | $ 24,500 | $ - | $ 49,000 |
| State and Local Tax | 6,250 | 6,250 | 6,250 | 6,250 | 25,000 |
| Utilities | 3,750 | 3,750 | 3,750 | 3,750 | 15,000 |
| Supplies | 3,750 | 3,750 | 3,750 | 3,750 | 15,000 |
| Maintenance Supplies | 2,500 | 2,500 | 2,500 | 2,500 | 10,000 |
| Franchise | 3,750 | 3,750 | 3,750 | 3,750 | 15,000 |
| Internet & Cable | 1,250 | 1,250 | 1,250 | 1,250 | 5,000 |
| Insurance | 150 | 150 | 150 | 150 | 600 |
| Food & Beverage Supplies | 2,250 | 2,250 | 2,250 | 2,250 | 9,000 |
| Uniforms | 63 | 63 | 63 | 63 | 250 |
| Unexpected Expense | 1,250 | 1,250 | 1,250 | 1,250 | 5,000 |
| 401K | 1,000 | - | 1,000 | - | 2,000 |
| **Total Cash Disbursements** | $ 50,463 | $ 24,963 | $ 50,463 | $ 24,963 | $ 150,850 |
| **Cash Flow from Operations** | $ (3,963) | $ 21,538 | $ (3,963) | $ 21,538 | $ 35,150 |
| **Adequate Protection Payments** | | | | | |
| Adequate Protection Payments | $ - | $ 60,000 | $ - | $ - | $ 60,000 |
| **Bankruptcy Related Costs** | | | | | |
| Okin Adams | $ - | $ - | $ - | $ 50,000 | $ 50,000 |
| The Claro Group | - | - | - | 50,000 | 50,000 |
| Margaret Maxwell McClure | - | - | - | - | - |
| **Total Bankruptcy Related Costs** | $ - | $ - | $ - | $ 100,000 | $ 100,000 |
| **Net Cash Flow** | $ (3,963) | $ (38,463) | $ (3,963) | $ (78,463) | $ (124,850) |
| **Cash Collateral Balance** | | | | | |
| Beginning Cash Balance | 189,000 | 185,038 | 146,575 | 142,613 | 189,000 |
| Gain/(Loss) from Activity | (3,963) | (38,463) | (3,963) | (78,463) | (124,850) |
| **Ending Cash Balance** | 185,038 | 146,575 | 142,613 | 64,150 | 64,150 |

**Note:** The expense amounts included in this cash forecast are based on the amounts included in the Final Cash Collateral Order.