IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-32261 |
| **KORNBLUTH TEXAS, LLC,** | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTORS' EMERGENCY APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF CBRE INC. AS BROKER FOR THE DEBTOR**

> **THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE APPLICATION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 12, 2021.**

Kornbluth Texas, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this *Emergency Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of CBRE Inc. as Broker for the Debtor* (the "Application"), and in support hereof, respectfully states as follows:

## I.     JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Application are sections 327, 328, and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## II.     BACKGROUND

3. This case (the "Chapter 11 Case") commenced on July 5, 2021 (the "Petition Date"), when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession. No official committee has been appointed in the Chapter 11 Case, and no request has been made for the appointment of a trustee or examiner.

5. The Debtor's primary asset is its interest in the real property commonly known as Holiday Inn Webster and located at 302 West Bay Area Boulevard, Webster, Texas 77598 (the "Property").

6. On September 30, 2021, the Court entered its *Order Regarding WFCM 2016-LC25 West Bay Area Boulevard, LLC's Motion for Relief from the Automatic Stay With Respect*

2

4822-1754-1375, v. 1

*to Non-Residential Real Property* [ECF # 85] (the "CRO Order") and appointed Douglas J. Brickley as Chief Restructuring Officer ("CRO") of the Debtor.  Pursuant to the CRO Order, the CRO is authorized and directed to engage the services of a broker to market the Property for sale through a sale process to be conducted under section 363 of the Bankruptcy Code.

### III.     RELIEF REQUESTED

7.      By this Application, the Debtor seeks entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing the employment and retention of CBRE Inc. ("CBRE" or the "Company") as broker for the Debtor in accordance with the terms and conditions of that certain Exclusive Sales Listing Agreement dated November 3, 2021 (the "Listing Agreement"), which is attached to this Application as **Exhibit A** and incorporated herein by reference.

### IV.     RETENTION OF CBRE

8.      The Debtor proposes to retain CBRE as its broker during the Chapter 11 Case to assist the Debtor in marketing and selling the Property pursuant to section 363 of the Bankruptcy Code.  Given the exigent circumstances of this Chapter 11 Case, the Debtor does not intend to file a separate motion seeking Court approval of sale and bidding procedures for an auction of the Property.  The Debtor will, in consultation with the Lender and CBRE, set appropriate deadlines for the sale process, including a bid deadline, auction date, and sale hearing date to be obtained from the Court.  The Debtor will provide notice of such deadlines to all prospective purchasers and parties in interest and file the notices on the Court's docket.

9.      CBRE is an internationally recognized commercial real estate broker with more than 100,000 professionals in 100 countries.  As a global commercial real estate company, CBRE has expertise in all aspects of commercial real estate services and investments. CBRE has worked with small and middle-market companies with similar size as the Debtor and is well

suited to serve as the Debtor's Property broker this Chapter 11 Case. In light of the foregoing, the Debtor believes that CBRE possesses extensive knowledge and expertise in the areas of commercial real estate relevant to this Chapter 11 Case and that CBRE is qualified to provide the specialized services requested by the Debtor. CBRE's extensive experience and resources will enable the Debtor to secure the highest and best sale price for the Property, which will ultimately benefit the Debtor's estate and creditors.

10. As more fully set forth in the Listing Agreement, the Debtor seeks to employ CBRE to assist with strategic broker services in connection with a sale of the Debtor's Property pursuant to section 363 of the Bankruptcy Code. Specifically, the services for which the Debtor proposes to retain CBRE include, but are not limited to, the following:

a) Reviewing the Property to determine its market appeal, quality of location, market and area trends, and potential for value enhancement;

b) Assembling and producing for the Debtor's review and approval an offering brochure and other marketing materials;

c) Advertising the Property for sale, providing prospective purchasers with additional information, and coordinating site visits;

d) Assisting in the identification, contacting, and screening of prospective purchasers;

e) Assisting in coordinating the due diligence investigations of prospective purchasers;

f) Communicating with the Debtor's representatives to discuss strategy for negotiating with prospective purchasers and obtaining the highest and best bids for the Property;

g) Advising and assisting the Debtor with respect to the structuring and implementation of any transaction for the Property, including evaluating proposals from, and participating in negotiations with, third parties; and

h) Performing such other advisory and broker services set forth in the Listing Agreement, or as may be mutually agreed upon by CBRE and the Debtor.

11. Because of the extensive services that will be necessary in the Chapter 11 Case, and the fact that the full nature and extent of such services are not known at this time, the Debtor believes that the employment of CBRE for all of the Debtor's purposes set forth above would be appropriate and in the best in interests of the Debtor.

### V.     CBRE IS "DISINTERESTED"

12. Under section 327(a) of the Bankruptcy Code, the trustee or debtor in possession is authorized to employ one or more professional persons that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. §§ 101(14) and 327(a).  Section 1107(b) of the Bankruptcy Code modifies sections 101(14) and 327(a) in cases under chapter 11 of the Bankruptcy Code, providing that a person is not disqualified for employment under section 327(a) of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.  11 U.S.C. § 1107(b).

13. To the best of the Debtor's knowledge, CBRE (including its principals and those employed by it) is not an insider, nor does the Company have any direct or indirect relationship to, connection with, or interest in the Debtor that would make its interests materially adverse to the interests of the estate or of any class of creditors or equity security holders.  The details of all other connections between CBRE and the Debtor or its creditors are set forth in the Declaration of Michael Yu (the "Yu Declaration"), which is attached to this Application as **Exhibit B** and incorporated herein by reference.  Further, CBRE does not have any connection with the Debtor's accountants, creditors, any other party in interest, the U.S. Trustee, or any person employed by the Office of the United States Trustee for the Southern District of Texas.  Based

5

upon the Yu Declaration, the Debtor believes that CBRE is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and is therefore qualified to be employed by the Debtor pursuant to section 327(a) of the Bankruptcy Code.

## VI. TERMS OF CBRE'S ENGAGEMENT

### A. Professional Compensation

14. The Debtor has agreed to engage CBRE pursuant to the Company's standard policies and procedures. Pursuant to, and qualified by, the terms and conditions of the Listing Agreement, the Debtor seeks approval of the following compensation arrangement pursuant to section 328(a) of the Bankruptcy Code:

> i) CBRE's sole and exclusive compensation for its services hereunder shall be (i) 2.50% (Two and One-Half PERCENT) of the gross sales price of any sale of the Property (the "Sale Fee") or (ii) (a) in the event of a credit bid with respect to the Property by Lender or (b) foreclosure on the Property by Lender, a flat fee of $50,000.00, exclusive of reasonable costs (the "Flat Fee"). Gross sales price shall include any and all consideration received or receivable, in whatever form, including but not limited to cash to the Debtor's estate or credit bid and release of existing liabilities of the Debtor's estate.

15. The Sale Fee and Flat Fee structure described above is comparable to compensation generally charged by commercial real estate brokers for similar engagements, both in and out of court. The structure is also consistent with CBRE's normal and customary billing practice for cases of this size and complexity that require the level of expertise and scope of specialized services outlined above and in the Listing Agreement. As a result, the Debtor believes that fee structure is reasonable and comports with market rates.

16. As set forth in the Yu Declaration, CBRE has not received a retainer from the Debtor, and has not yet been paid any amount in connection with the Chapter 11 Case. *See* 11

U.S.C. § 329.  Further, CBRE has not shared, or agreed to share, any compensation as may be awarded by the Court, except as among members of CBRE and its employees.

**B.**     **Fee Applications and Record Keeping**

17.     As set forth above, CBRE is not charging for its services on an hourly basis.  As is customary for CBRE and other commercial real estate brokers in engagements of this nature, CBRE is charging a fixed fee for brokerage services set forth in the Listing Agreement, and as may be approved by this Court.  Accordingly, the Debtor is advised that CBRE will not maintain or keep detailed time records for services as customarily kept by attorneys or financial advisors.

18.     Notwithstanding the foregoing, CBRE has agreed to apply for final allowance and approval of compensation for professional services rendered in connection with the Chapter 11 Case, subject to approval of this Court and compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules.  Specifically, the Debtor and CBRE understand and agree that the proposed compensation agreement in the Listing Agreement is subject to section 328(a) of the Bankruptcy Code, which authorizes this Court to allow compensation different from what is provided herein, if the fee arrangement, in retrospect, appears to have been improvident in light of developments unanticipated at the outset.  However, the compensation arrangement should not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, and the Debtor requests that the Company: (i) be excused from keeping time records for services rendered in one-tenth of an hour increments; (ii) only be required to maintain expense reimbursement records; and (iii) only be required to submit a narrative summary of services rendered and the total amount of compensation requested for final approval in any final fee application.

4822-1754-1375, v. 1

### C.     Indemnification

19. As more fully set forth in the Listing Agreement, the Debtor has agreed, among other things, to indemnify and hold harmless CBRE, its affiliates, and its partners, directors, officers, agents, and employees in connection with CBRE's representation of the Debtor, subject to certain exceptions (the "Indemnification Provisions"). The Debtor has been advised that the Indemnification Provisions are customary and reasonable terms of consideration for brokers, financial advisors, and investment bankers for proceedings both out of court and in chapter 11 cases. The terms of the Indemnification Provisions were negotiated between the Debtor and CBRE at arm's-length and the Debtor respectfully submits that the Indemnification Provisions are reasonable and in the best interests of the Debtor, the estate and creditors.

### VII.     EMERGENCY CONSIDERATION

20. Pursuant to Bankruptcy Rule 9013-1, the Debtor respectfully requests emergency consideration of this Application. This Application is filed because the Debtor is operating the Property that needs to be sold on an expedited basis in accordance with the milestones set forth in the Court's CRO Order which, in turn, will preserve value and ensure an orderly transition of the assets to a successful bidder identified at the conclusion of the auction, if any. While Debtor's CRO has engaged in significant efforts to maintain the business and preserve value, the Debtor has a need to retain CBRE as a broker to market the Property and identify potential bidders in the compressed timeline afforded to the Debtor under the circumstances of this Chapter 11 Case. Accordingly, the Debtor respectfully requests that the Court approve the relief requested in this Application on an emergency basis.

### VIII.     CONCLUSION

WHEREFORE, the Debtor requests that this Court enter an order, substantially in the form attached hereto, approving the retention of CBRE Inc. as commercial real estate broker for

the Debtor in this Chapter 11 Case, and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 4th day of November, 2021.

        **OKIN ADAMS LLP**

        By:     /s/ *Matthew S. Okin*
              Matthew S. Okin
              Texas Bar No. 00784695
              Email: mokin@okinadams.com
              Ryan A. O'Connor
              Texas Bar No. 24098190
              Email: roconnor@okinadams.com
              1113 Vine St., Suite 240
              Houston, Texas 77002
              Tel: 713.228.4100
              Fax: 888.865.2118

        **PROPOSED ATTORNEYS FOR THE DEBTOR**

### CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify to the accuracy of the matters set forth in the foregoing Application.

        By:     /s/ *Matthew S. Okin*
              Matthew S. Okin

### CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

        By:   /s/ *Matthew S. Okin*
              Matthew S. Okin