United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 17, 2021
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| KORNBLUTH TEXAS, LLC, | § | Case No. 21-32261 (CML) |
| | § | |
| Debtor | § | |

**INTERIM AGREED ORDER AUTHORIZING
THE CONTINUED USE OF CASH COLLATERAL**

Kornbluth Texas, LLC, the above-captioned debtor and debtor in possession (the "Debtor") and WFCM 2016-LC25 West Bay Area Boulevard, LLC ("Lender" and together with the Debtor, the "Parties"), acting by and through their undersigned counsel, stipulate and agree (the "Stipulated Order") as follows:

**RECITALS**

A.   WHEREAS, on July 5, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1] The Debtor continues to manage its property and its business as a debtor in possession pursuant to §§ 1107 and 1108. The Debtor's primary asset is its interest in the real property commonly known as Holiday Inn Webster and located at 302 West Bay Area Boulevard, Webster, Texas 77598 (the "Property").

B.   WHEREAS, Lender asserts that it is the holder of security interests, liens, and mortgages in all or substantially all of the Debtor's property, including, but not limited to: (i) the Property and improvements thereon; (ii) all of the Debtor's rights, title, and interests in all leases,

---

[1] Unless otherwise indicated, all section (§) references are to the Bankruptcy Code.

revenue, and rents collected therefrom; and (iii) all of the Debtor's rights, title, and interests in all buildings, structures, fixtures, inventory and personal property located thereon (collectively, the "Collateral"), as evidenced by the loan documents (collectively, the "Loan Documents").  Lender asserts that all of the Debtor's proceeds from the Collateral are cash collateral of the Lender (the "Cash Collateral") within the meaning of § 363(a).

C. WHEREAS, the U.S. Small Business Administration asserts it has a validly perfected lien encumbering all of the debtor's tangible and intangible personal property, including but not limited to accounts, deposit accounts, and receivables.

D. WHEREAS, on September 30, 2021, the Court appointed Douglas Brickley of The Claro Group, LLC as the Chief Restructuring Officer of the Debtor ("CRO") pursuant to Bankruptcy Code section 327(a) to operate and manage the Debtor's business operations.

E. WHEREAS, on October 13, 2021, the Court entered its *Agreed Order and Stipulation Authorizing Debtor to Use Cash Collateral on a Final Basis* [Docket No. 110] (the "Final Cash Collateral Order").

F. WHEREAS, appended to the Final Cash Collateral Order as Exhibit A was an operating budget for October 2021 and the Parties subsequently agreed to an operating budget for November 2021.

G. WHEREAS, for December 2021 and January 2022, the Debtor and Lender agree that it is in the best interest of the Parties and the Debtor's bankruptcy estate for the Cash Collateral to be used in accordance with the budget attached hereto as **Exhibit "A"** (as the same may be amended or modified with the express prior written consent of Lender, the "Revised Operating Budget").

H.  WHEREAS, except as otherwise stated herein, the Debtor, Lender, and the United States reserve all of their respective rights against the other with respect thereto.

## STIPULATION AND ORDER

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE DEBTOR AND LENDER, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:

1. Except as set forth below, (i) that certain Stipulation [Docket No. 117] between the Debtor, Lender, and Holiday Hospitality Franchising, LLC; and (ii) the Final Cash Collateral Order are incorporated by reference herein.[2]

2. The Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use Authorized Cash Collateral (as defined in the Final Cash Collateral Order) in accordance with the Revised Operating Budget.

3. Section 2(f) of the Final Cash Collateral Order is stricken; *provided, however*, that the Debtor shall pay the Lender the amount of $20,000 as an Adequate Protection Payment within three (3) business days of entry of this Stipulated Order.

4. Section 4 of the Final Cash Collateral Order is revised to read as follows:

Notwithstanding anything to the contrary contained herein, the Debtor's right to use the Cash Collateral shall expire, on the earliest to occur (the first such occurrence being hereinafter referred to as the "Termination Event") of: (i) the date Lender's claim (as agreed to between the Parties or adjuducated by the Court) is paid in full (the "Payoff Date"); (ii) January 15, 2022; (iii) the entry of an order by this Court terminating the use of Cash Collateral; (iv) the conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (v) the appointment of a trustee or examiner; (vi) the occurrence of the effective date or consummation of a plan of reorganization; or (vii) the Debtor's non-compliance with any term or provision of this Stipulated Order and the expiration of five (5) days' notice of such alleged default and opportunity to cure.

---

[2] Capitalized terms not defined herein shall have the meanings given to them in the Final Cash Collateral Order.

5. Section 3 of the Final Cash Collateral Order is revised to read as follows, but only with respect to the Debtor's use of Cash Collateral for the months of December 2021 and January 2022.

*Carve-Out.* Subject to the terms and conditions contained in this paragraph, the Adequate Protection Obligations shall be subject and subordinate to payment of a carve-out (the "Carve-Out"). As used in this Stipulated Order, the term "Carve-Out" shall mean: (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"); (b) actually incurred expenses included in the Revised Operating Budget but unpaid as of the Termination Date (defined herein) of the Debtors' right to use Authorized Cash Collateral under this Stipulated Order; and (c) the aggregate amount of any fees and expenses of any Court-approved estate professionals (the "Professionals") which are actually incurred, but unpaid as of the Termination Date, but only to the extent such fees and expenses have been previously or subsequently are approved by this Court and only to the extent such incurred and unpaid fees and expenses exceed any retainer held by any such Professional at the time of such termination. In addition, the Carve-Out shall include the reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000. Prior to the Termination Date, and subject to the entry of an appropriate order of this Court (in form and substance reasonably acceptable to the Lender), the Debtor shall be authorized to use Authorized Cash Collateral to pay compensation and reimbursement of budgeted expenses allowed and payable through and including the Termination Date in accordance with the Revised Operating Budget. To the extent the Debtor has insufficient funds to pay compensation and reimbursement of expenses through and including the Termination Event in accordance with the Revised Operating Budget, Lender agrees: (i) to pay the shortfall from the disposition of Lender's Collateral; and (ii) the Carve-Out set forth in this Stipulated Order shall survive and remain in full force and effect regardless of whether Lender forecloses and/or sells the Collateral as provided in the Court's prior Order [ECF # 85] lifting the automatic stay. Nothing herein shall be construed to impair the ability of any party in interest to object any fees, expenses, reimbursement, or compensation sought by the Professionals, nor shall anything herein be construed to affect the rights of any party in interest to file an application for the allowance of fees and expenses.

6. In addition to the provisions of the Final Cash Collateral Order which are incorporated in this Stipulated Order, the Parties agree that the Carve-Out shall not exceed an amount equal to the sum of amounts previously agreed to pursuant to the Court's Final Cash Collateral Order plus the difference between (i) the allowed amount of the Lender's claim against the Debtor's Bankruptcy Estate and (ii) any amounts paid to the Lender on account of such claim,

including the amount of any credit bid by the Lender at a foreclosure sale. Further, nothing in this ~~XXXXXXXX~~ ~~Stipulated~~ Order or in any prior order of the Court shall be deemed a waiver by the Debtor or its estate of its rights against any creditor, other than the Lender, pursuant to section 506(c) of the Bankruptcy Code.

7. The Court shall retain jurisdiction with respect to all matters arising from or related to this ~~XXXXXXXX~~ ~~Stipulated~~ Order.

8. **The Court will conduct a hearing on the continued use of cash collateral under this Order on December 30, 2021 at 10:00 a.m.**

Signed: December 17, 2021

_____
Christopher Lopez
United States Bankruptcy Judge

AGREED AND CONSENTED TO:

**OKIN ADAMS LLP**

By:   /s/ *Matthew S. Okin*
      Matthew S. Okin
      Texas Bar No. 00784695
      Email: mokin@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      Email: roconnor@okinadams.com
      1113 Vine Street, Suite 240
      Houston, Texas  77002
      Tel: (713) 228-4100
      Fax: (888) 865-2118

**COUNSEL TO THE DEBTOR**

**MCDERMOTT WILL & EMERY LLP**

/s/    *Eric C. Seitz*
Charles R. Gibbs (TX Bar No. 07846300)
Eric C. Seitz (TX Bar No. 24067863)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel:  469.715.4979
Fax:  972.692.7700
crgibbs@mwe.com
eseitz@mwe.com

**COUNSEL FOR WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC**

# EXHIBIT A

## REVISED OPERATING BUDGET

DM_US 181057912-1.111858.0024

**Kornbluth Texas, LLP**
Case 21-32261
Seven Week Cash Flow

| | Week Ending 12/17/2021 | Week Ending 12/24/2021 | Week Ending 12/31/2021 | Week Ending 1/7/2022 | Week Ending 1/14/2022 | Week Ending 1/21/2022 | Week Ending 1/28/2022 | Totals |
|---|---|---|---|---|---|---|---|---|
| Room Nights Available | 763 | 763 | 763 | 763 | 763 | 763 | 763 | |
| Room Nights | 331 | 331 | 331 | 344 | 344 | 344 | 344 | 2369 |
| Occupancy Percentage | 43.4% | 43.4% | 43.4% | 45.1% | 45.1% | 45.1% | 45.1% | 44.4% |
| ADR | $90.89 | $90.89 | $90.89 | $92.71 | $92.71 | $92.71 | $92.71 | $ 91.95 |
| | | | | | | | | |
| **Cash Receipts**[1] | 30,085 | 30,085 | 30,085 | 31,892 | 31,892 | 31,892 | 31,892 | 217,823 |
| | | | | | | | | |
| **Cash Disbursements** | | | | | | | | |
| + Employee Payroll | 24,500 | - | 24,500 | - | 24,500 | - | 24,500 | 98,000 |
| Food and Beverage Expense | 250 | 250 | 250 | 250 | 300 | 300 | 300 | 1,900 |
| State and Local Tax (do not use) | - | - | - | - | - | - | - | - |
| Property Tax[2] (do not use) | - | - | - | - | - | - | - | - |
| + Gas and Electricity | - | - | - | - | 3,724 | - | - | 3,724 |
| + Water/Sewer | - | 840 | - | - | - | - | 840 | 1,680 |
| + Maintenance Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 1,750 |
| + Operational Franchise Fee | | 17,500 | | | | 19,725 | | 37,225 |
| Equipment Repairs & Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 3,500 |
| + Laundry and Housekeeping Supplies | 662 | 662 | 662 | 688 | 688 | 688 | 688 | 4,738 |
| Office Supplies | | | | 150 | | | | 150 |
| Lobby Materials (do not use) | - | - | - | - | - | - | - | - |
| Internet & Cable | - | - | 5,000 | - | - | - | 5,000 | 10,000 |
| Travel Agent Commissions (2.5% Transient) | 752 | 752 | 752 | 797 | 797 | 797 | 797 | 5,446 |
| 401K | 1,400 | - | 1,400 | - | 2,500 | - | 2,500 | 7,800 |
| Miscellaneous Expense[3] | 1,053 | 1,053 | 1,053 | 1,116 | 1,116 | 1,116 | 1,116 | 7,624 |
| **Total Cash Disbursements** | 29,367 | 21,807 | 34,367 | 3,752 | 34,376 | 23,377 | 36,492 | 183,536 |
| | | | | | | | | |
| **Cash Flow from Operations** | 718 | 8,278 | (4,282) | 28,141 | (2,483) | 8,516 | (4,599) | 34,286 | 15.7% |
| | | | | | | | | |
| **Non-Operating Expenses** | | | | | | | | |
| Capital Expenditures & One Time Expense[4] | 6,898 | - | - | - | - | - | - | 6,898 |
| Insurance | - | 12,465 | - | - | - | - | 12,465 | 24,930 |
| Property Tax[2] | - | - | - | - | - | - | - | 63,141 |
| State and Local Tax | - | - | 17,388 | - | - | - | 16,008 | 33,700 |
| Past Due Franchise Fees[5] | - | - | - | - | - | - | - | - |
| **Total Non-Operating Expenses** | 6,898 | 12,465 | 17,388 | - | - | - | 28,473 | 65,224 |
| | | | | | | | | |
| **Adequate Protection Payments** | | | | | | | | - |
| Adequate Protection Payments | 20,000 | - | - | - | - | - | - | 20,000 |
| | | | | | | | | |
| **Bankruptcy Related Costs** | | | | | | | | - |
| Okin Adams[6] | - | - | - | - | - | - | - | - |
| The Claro Group[6] | - | - | - | - | - | - | - | - |
| BTTX Associates | - | - | - | 7,500 | - | - | - | 7,500 |
| US Trustee[6] | - | - | 1,605 | - | - | - | 391 | 1,996 |
| **Total Bankruptcy Related Costs** | - | - | 1,605 | 7,500 | - | - | 391 | 9,496 |
| | | | | | | | | |
| **Net Cash Flow** | (26,181) | (4,187) | (23,275) | 20,641 | (2,483) | 8,516 | (33,464) | (60,434) |
| | | | | | | | | |
| **Cash Collateral Balance** | | | | | | | | |
| Beginning Cash Balance | 259,921 | 233,740 | 229,553 | 206,278 | 226,919 | 224,435 | 232,951 | 259,921 |
| Gain/(Loss) from Activity | (26,181) | (4,187) | (23,275) | 20,641 | (2,483) | 8,516 | (33,464) | (60,434) |
| **Ending Cash Balance** | 233,740 | 229,553 | 206,278 | 226,919 | 224,435 | 232,951 | 199,487 | 199,487 |
| | | | | | | | | |
| Post Close Expenses[7] | | | | | | | | 113,141 |

**Notes**

1. Revenues are estimated based on STR and PY performance.
2. Property taxes are included in post close expenses
3. Miscellaneous Expense is estimated to be 3.5% of weekly revenues
4. See tab "Capital & One Time Expense" for a breakout of Capital Expenses for the week ending 12/10
5. The current amount outstanding for over due Franchise Fees is $73,459.20. We are currently
in the process of determining the break out of pre and post-petition as well as working out a
payment plan.
6. See tab "Accrued & Unpaid Expenses" for breakout of estimated professional fees accrued in Oct and Nov
7. See tab "Accrued & Unpaid Expenses" for breakout

**Accrued & Unpaid Expenses**

*There are no unpaid expenses outside of those listed below that we are currently aware of

**Professional Fees**

**Okin Adams**

|  | Estimated Actuals ||
| --- | --- | --- |
|  | October | November |
| Estimated Actuals | $ 50,000 | $ 50,000 |
| Payments | - | - |
| Outstanding Balance | $ 50,000 | $ 100,000 |

**The Claro Group**

|  | Estimated Actuals ||
| --- | --- | --- |
|  | October | November |
| Estimated Actuals | $ 50,000 | $ 50,000 |
| Payments | - | - |
| Outstanding Balance | $ 50,000 | $ 100,000 |

*Professional fees for December and January not included in budget

**Other Expenses**

**Due at Close**

| Property Taxes | $ 63,141 |
| --- | --- |
| CBRE | $ 50,000 |
| **Total** | **$ 113,141** |

**Unpaid Franchise Fees**

*Currently in the process of determining the outstanding balance*

**US Trustee Fees**

*Calculation: .4% x (Quarterly Disbursements-62,624)+250*

**Q4**

| October Disbursements | $ 216,468 |
| --- | --- |
| November Disbursements |  92,117 |
| December Disbursements (Estimated) |  92,732 |
| **US Trustee Fees** | **$ 1,605** |

**Q1**

| January Disbursements |  97,995 |
| --- | --- |
| **US Trustee Fees** | **$ 391** |

**Capital & One Time Expenses**

**Capital & One Time Expenses**

| Vendor | Description | Amount |
|---|---|---|
| Yvonne Small | Expense Reimbursement for essential items | $1,800.00 |
| Kat's Plumbing | Boiler repair | $2,482.16 |
| Willbanks | Boiler repair | $2,616.32 |

**$6,898.48**